

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00115-CV

_____

GARRISON INVESTMENT GROUP LP, ANDY KWON, AND TYLER BROWN,
Appellants

V.

LLOYD JONES CAPITAL, LLC, Appellee

On Appeal from the 211th District Court
Denton County, Texas
Trial Court No. 18-7063-211

Before Gabriel, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Gabriel

**MEMORANDUM OPINION**

Appellants Garrison Investment Group LP, Andy Kwon, and Tyler Brown (collectively, Garrison)[1] appeal from the trial court's order denying their motion to dismiss appellee Lloyd Jones Capital, LLC's (LJC) claims against them under the Texas Citizens Participation Act (TCPA). LJC's claims arose from a commercial business dispute that does not implicate the TCPA. Accordingly, we affirm the trial court's order.

## I. BACKGROUND

In 2016, Overlook at Prestonwood, LP (Overlook) built a 183-unit, active-senior apartment complex—Atlas Point—and partially funded the construction through a mortgage-insurance program provided by the Department of Housing and Urban Development (HUD). *See* 12 U.S.C.A. § 1715*l* (West 2014).[2] Under this

---

[1]Unless contextually necessary, any reference to Garrison includes Kwon and Brown; however, we will refer to Garrison in the singular.

[2]Both Garrison and LJC asserted in the trial court and now on appeal that HUD insured Overlook's mortgage under the provisions of § 1715*l* (also referred to as insurance under "section 221(d)(4) of the National Housing Act"), which applies to "housing for low and moderate income families and displaced families." 12 U.S.C.A. § 1715*l*(a); 24 C.F.R. § 221.501. Neither Garrison nor LJC mentions § 1715v (also referred to as insurance under "section 231 of the National Housing Act"), which authorizes mortgage insurance to address "the shortage of housing for elderly persons." *Id.* § 1715v(a) (West 2014); 24 C.F.R. § 231.1. Both Garrison and LJC assert that § 1715*l* additionally applies to facilitate housing for the elderly. For the purposes of this opinion, we likewise will assume that the loan was insured under § 1715*l*, but we specifically note that this section contains no age restriction and that it does not expressly apply to senior housing.

2

program, the owner of a property encumbered by a mortgage insured by HUD cannot sell the property unless HUD approves of the proposed buyer. *See id.* § 1709(b)(1) (West 2014).

LJC invests in, develops, and manages multifamily and senior housing with the ultimate goal of selling the property for a profit. In November 2017 while Atlas Point was still under construction, LJC determined, based on "extensive research," that Atlas Point was "a key off-market investment,[3] acquisition, and management real property target." On December 19, 2017, LJC signed a letter of intent (LOI) to buy Atlas Point from Overlook.[4] The LOI recognized that the sale was subject to LJC's ability to assume Overlook's $26.3 million HUD-insured mortgage, requiring LJC to seek HUD's approval. Overlook signed, and thereby accepted, the LOI the next day.[5] On January 10, 2018, LJC provided Overlook with a draft purchase and sale agreement (PSA).

LJC was interested in forming a limited partnership or joint venture with an equity investor to buy Atlas Point. In February, LJC and Garrison, a provider of equity-investment services in commercial real-estate transactions, discussed forming

---

[3]An off-market investment is one not listed with a broker or on a listing database.

[4]LJC acted through Christopher C. Finlay, its president, and Raul Ramirez, its chief financial officer.

[5]Overlook acted through two of its principal owners, Chris Willhite and Luke Harry.

such a joint venture with Garrison being the primary equity investor.[6] Garrison was aware that any sale of Atlas Point would be subject to HUD's approval. On March 9 and 12, Garrison proposed materially different terms for the joint venture; LJC asserts these terms "were below market rate and industry standards, and not equivalent to the standard promote fee structure the parties had previously based their discussions on."

LJC, wanting to avoid losing the time and resources it had expended to conduct its due diligence regarding the draft PSA with Overlook, began looking for another equity partner. On March 14, LJC informed Garrison that it was considering buying Atlas Point with a different equity partner. On March 19, LJC signed a PSA with Overlook, using a different equity partner—Sefira Capital. The PSA provided that LJC would apply for HUD approval and that Overlook was required to actively lease vacant units pending the sale. Soon thereafter, LJC discovered that Overlook had not been leasing vacant units, leading LJC to terminate the PSA on April 16.

LJC and Garrison again began negotiating a joint venture to acquire Atlas Point. This time, LJC would provide no equity for the acquisition, and Garrison would engage LJC to manage Atlas Point. Overlook informed Garrison that Garrison would have to rely on LJC's prior due diligence from the terminated March 19 PSA "to determine if [Garrison] wanted to buy the property."

---

[6]Garrison acted through Kwon, its managing director, and Brown, a representative of Garrison's real-estate acquisition division.

4

LJC later learned that during this time, Garrison had been negotiating with Overlook to buy Atlas Point without LJC's involvement. In any event, LJC and Garrison signed a "non-binding" term sheet on May 3, memorializing their joint interest in pursuing "a fee agreement or property management agreement." LJC contends that it then provided Garrison with its "highly valuable due diligence materials." Garrison asserts that after much nagging, LJC disclosed "almost no due diligence at all." Garrison eventually hired its own construction consultant and real-estate services company to help with its due diligence regarding its proposed Atlas Point acquisition.

On May 14, Garrison signed an LOI with Overlook; both signed a PSA on June 1. In late June, Garrison applied for HUD approval to acquire Atlas Point under the terms of its PSA with Overlook.

On August 10, LJC sued Garrison for breach of a joint-venture agreement; tortious interference with prospective business relations; unjust enrichment/quantum meruit; fraud/fraudulent inducement/fraud by nondisclosure; promissory estoppel/detrimental reliance; and civil conspiracy.[7] On October 19, Garrison filed a motion to dismiss LJC's claims under the TCPA, arguing that LJC's suit involved the exercise of protected constitutional rights. *See* Act of May 21, 2011, 82nd Leg., R.S.,

---

[7]LJC also sued Overlook and Willhite, but they quickly settled with LJC and are not parties to this appeal. LJC raised a breach-of-contract claim but only against Overlook.

ch. 341, § 2, 2011 Tex. Sess. Law Serv. 960, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a)).[8]  At approximately this same time, Garrison apparently received HUD's approval to assume Overlook's mortgage and closed the deal with Overlook, becoming Atlas Point's sole owner.  Shortly before the sale closed, Garrison hired Capstone Real Estate Services, Inc.—not LJC—to manage Atlas Point.

After holding a nonevidentiary hearing on February 13, 2019, the trial court denied Garrison's motion to dismiss on March 8.  *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Sess. Law Serv. 960, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)).  Garrison appeals and, in seven issues, argues that the trial court erred by denying its motion to dismiss.[9]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12).

---

[8]Our initial citations to a section of the TCPA that was amended after the date LJC filed its suit will include the session-law information for the enacted version in effect at that time.  Subsequent citations will simply cite to the current section number with the parenthetical "(amended 2019)," but we will rely on the specific language in effect at the time LJC's suit was filed.

[9]The trial court's order included several statements regarding which claims were not subject to dismissal on what basis.  At the end of the day, the trial court denied the motion in toto as to each of LJC's claims, which is the ultimate ruling we are asked to review on appeal.  *Cf. Read v. Verboski*, 524 S.W.3d 901, 903 (Tex. App.— Fort Worth 2017, pet. denied) (reviewing dismissal under Chapter 14 of the Civil Practice and Remedies Code de novo and noting dismissal of frivolous claim may be affirmed "if [dismissal] was proper under any legal theory").

## II. TCPA FRAMEWORK

As has been recognized many times before, the TCPA has dual purposes: protecting First Amendment rights to the full extent of the law while also protecting the right to file meritorious lawsuits. *See id.* § 27.002; *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding); *Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 797 (Tex. App.—Fort Worth 2018, pet. denied). Even though we must construe the TCPA liberally, that construction must "effectuate" these purposes. Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b).

A defendant seeking the protection of the TCPA must initially produce a preponderance of the evidence that the legal action is based on, relates to, or is in response to the exercise of the rights to free speech, to petition, or of association. *See id.* § 27.005(b) (amended 2019). If the movant does so, the burden shifts to the nonmovant to produce clear and specific evidence of a prima facie case for each element of each asserted claim. *See id.* § 27.005(c). If the nonmovant meets its burden, the movant may still be entitled to dismissal if it shows by a preponderance of the evidence each element of a valid defense to the claims. *See* Act of May 22, 2013, 83rd Leg., R.S., ch. 1042, § 2, 2013 Tex. Sess. Law Serv. 2501, 2501 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d)).

We review the trial court's interpretation of this statutory framework de novo, focusing on the enacted language of the applicable provisions. *See S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *Youngkin v. Hines*,

7

546 S.W.3d 675, 680 (Tex. 2018). In our review, the pleadings, especially the plaintiff's allegations, are the best evidence to determine the nature of a legal action and the applicability of the TCPA. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *see also* Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Sess. Law Serv. 960, 962 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a)).

## III. LJC'S CLAIMS AND THE APPLICABILTY OF THE TCPA

LJC's claims revolve around Garrison's actions that allegedly impacted LJC's attempts to purchase Atlas Point from Overlook, either alone or as an equity partner, and LJC's interest in becoming Garrison's management entity for Atlas Point:

- Breach of a joint-venture agreement: "Plaintiff and Garrison, expressly or by implication, entered into a joint venture agreement for the purchase, operation, management, and disposition of Atlas Point. . . . Garrison breached its duties to Plaintiff . . . ."

- Tortious interference with prospective business relations: "[T]here was a reasonable probability that Plaintiff would have entered into a business relationship with Overlook regarding the purchase of Atlas Point after the cancellation of the [March 2018] PSA. Garrison . . . [was] aware of these contractual and business relationships, yet intentionally, with improper motive and without justification or excuse, interfered with this relationship."

- Unjust enrichment/quantum meruit: "Plaintiff performed valuable services, including the provision of invaluable information and opportunity, for Garrison's . . . benefit," but Garrison failed to pay for those services.

- Fraud/fraudulent inducement/fraud by nondisclosure: Garrison fraudulently procured the May 3, 2018 term sheet from LJC with no intention of performing.

8

- Promissory estoppel/detrimental reliance: LJC's reliance on Garrison's promises "regarding [Garrison's] participating in, and compensation from, the Atlas Point transactions" was foreseeable and caused LJC to not compete for the right to buy Atlas Point.

- Civil conspiracy: Garrison "participated" and "combined" with Overlook and Willhite to commit fraud and fraud by nondisclosure regarding the May 3, 2018 term sheet between Garrison and LJC.

Our first inquiry is whether Garrison established that the TCPA applies to LJC's claims as pleaded. LJC argues that the TCPA applies to none of its claims; Garrison asserts it applies to all. Garrison contended in the trial court that each of LJC's claims arose from the same nucleus of facts and were based on, related to, or were in response to Garrison's exercise of its rights to free speech, to petition, and of association:

> All of LJC's claims against the Garrison Parties are rooted in their exercise of rights of free speech, association and to petition because they relate to or arise out of (a) communications made in connection with the sale of a government-insured senior housing facility, (b) the Garrison Parties' freedom to choose and associate with their own business partners, and (c) petition activity in connection with the approval process for the assumption of a HUD loan.

## A. FREE SPEECH

The TCPA defines the exercise of the right to free speech as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). In turn, a matter of public concern is an issue related to "health or safety"; "environmental, economic, or community well-being"; or "the government."

9

Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Sess. Law Serv. 960, 961 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7)).

Garrison argues that LJC's claims related to free speech because Atlas Point is a HUD-insured, senior-housing facility; thus, any alleged communications regarding the sale, which required HUD's approval, involved a matter of public concern—a governmental issue, economic well-being, and community well-being. The TCPA does not require that a communication specifically mention a matter of public concern or have more than a tangential relationship to such a matter; rather, the TCPA applies if Garrison's alleged communications were connected to an issue that relates to the listed public concerns. *See ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (per curiam). Even so, the TCPA is not amorphous—there are boundaries to its application. *See In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex. App.—Fort Worth Oct. 25, 2018, orig. proceeding) (mem. op.).

Simply because HUD insured Overlook's mortgage, which was later assumed by Garrison, does not transform the private business negotiations and transactions underlying LJC's claims into a matter of public concern: "[W]hat breach of contract [or fraudulent-inducement] action would not find its genesis in communication between the parties? And to be actionable, how would such communication not also touch upon the economic well-being of the parties?" *Id.*; *see Pinghua Lei v. Nat. Polymer Int'l Corp.*, 578 S.W.3d 706, 715 (Tex. App.—Dallas 2019, no pet.). And the fact that

Atlas Point was marketed to active senior adults does not mean that LJC's claims involve a public concern. No alleged communication underlying LJC's claims related to anything other than a private business dispute between private, for-profit businesses. *See Erdner v. Highland Park Emergency Ctr., LLC*, 580 S.W.3d 269, 276 (Tex. App.—Dallas 2019, no pet. h.); *Brugger v. Swinford*, No. 14-16-00069-CV, 2016 WL 4444036, at *2–3 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, no pet.) (mem. op.). Although the subject of Garrison and LJC's business discussions was the acquisition of a senior-living facility encumbered with a HUD-insured mortgage, the private business communications underlying LJC's claims were not founded on the character of the facility or its mortgage insurance; thus, the implicated communications were not on a matter of public concern. *See, e.g., U.S. Anesthesia Partners of Tex., P.A. v. Mahana*, No. 05-18-01414-CV, 2019 WL 4044086, at *3–4 (Tex. App.—Dallas Aug. 27, 2019, pet. filed); *Erdner*, 580 S.W.3d at 276–77; *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 427–29 (Tex. App.—Dallas 2019, pet. denied); *Smith*, 565 S.W.3d at 798; *Sloat v. Rathbun*, 513 S.W.3d 500, 508–09 (Tex. App.—Austin 2015, pet. dism'd).

We conclude that Garrison failed to show by a preponderance of the evidence that LJC's claims were even tangentially based on, related to, or in response to the exercise of Garrison's free-speech rights. *See Erdner*, 580 S.W.3d at 276 ("A private communication made in connection with a business dispute is not a matter of public concern."); *Pinghua Lei*, 578 S.W.3d at 715 ("We cannot conclude that these alleged

11

communications are tangentially related to a matter of public concern simply because the proprietary and confidential information at issue belonged to a company in the business of selling pet treats that promote health or because the alleged tortfeasors hoped to profit from their conduct." (internal quotation marks omitted)); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 216–17 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (op. on reh'g) (concluding intra-company employment discussions were not on a matter of public concern and noting that "[o]therwise, any communication that is part of the decision-making process in an employment dispute—to name just one example—could be used to draw within the TCPA's summary dismissal procedures private suits implicating only private issues").

To hold as Garrison urges would seem to extend TCPA protection to any dispute over a property encumbered with a federally-insured mortgage, even disputes that have nothing to do with the character or status of the mortgage. This would be a step too far. *See Dow Jones & Co. v. Highland Capital Mgmt., L.P.*, 564 S.W.3d 852, 857–58 (Tex. App.—Dallas 2018, pet. denied) (rejecting attempt to broaden TCPA's scope when application of TCPA would result in "proliferation of motions to dismiss," running "counter to TCPA's stated purpose" and promoting "a potentially absurd result"); *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 855 (Tex. App.—Austin 2018, pet. denied) (rejecting "broad and isolated interpretation of the TCPA"). *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b) (mandating liberal construction of TCPA but only to the extent the construction accomplishes its dual purposes).

12

## B. PETITION

Garrison argues that LJC's claims implicated its right to petition HUD "for approval to assume Overlook's . . . loan," which "played a central role in the Atlas Point transaction and feature[d] significantly in LJC's claims." In the trial court, Garrison asserted that the challenged communications involved its right to petition because they were (1) "in or pertaining to . . . an executive or other proceeding before a department of the . . . federal government" or (2) "in connection with an issue under consideration or review by a . . . governmental body." *Id.* § 27.001(4)(A)(iii), (B).

As with Garrison's attempt to invoke its free-speech rights as a trigger for the TCPA, LJC's claims do not, even tangentially, pertain or connect to Garrison's June 2018 application for HUD approval. None of LJC's claims assert that Garrison's application was fraudulent, constituted a breach of its agreement with LJC, or otherwise contributed to LJC's allegations. And none chilled or otherwise affected Garrison's attempts to gain HUD's approval to assume Overlook's federally insured mortgage. In short, LJC's claims are not factually predicated on Garrison's HUD application. *See, e.g., Dyer*, 573 S.W.3d at 429–30; *Beving v. Beadles*, 563 S.W.3d 399, 407 (Tex. App.—Fort Worth 2018, pet. denied). *See generally Porter-Garcia v. Travis Law Firm, P.C.*, 564 S.W.3d 75, 85 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (recognizing claim is based on, relates to, or is in response to exercise of right to petition if legal action is factually predicated upon or relates to conduct falling within

13

that right). "Any activities by the movant that are not a factual predicate for the non-movant's claims are not pertinent to our inquiry regarding whether the TCPA applies." *Riggs & Ray, P.C. v. State Fair of Tex.*, No. 05-17-00973-CV, 2019 WL 4200009, at *4 (Tex. App.—Dallas Sept. 5, 2019, no pet.) (mem. op.). Thus, LJC's claims were not based on, related to, or in response to Garrison's right to petition HUD.

## C. ASSOCIATION

Garrison contends that LJC's claims implicate its right to associate because the alleged communications involved "pursuing common interests with Overlook to transfer ownership of Atlas Point and its HUD-backed loan" and Garrison's "association with [Capstone] to manage Atlas Point instead of LJC." The right to associate is defined in the TCPA as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." Act of May 21, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Sess. Law Serv. 960, 960 (amended 2019) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 27.001(2)). An interest is common if it is "shared by the public or at least a group." *Kawcak v. Antero Res. Corp.*, 582 S.W.3d 566, 576 (Tex. App.—Fort Worth 2019, pet. denied). Here, any challenged communications were between private business parties on private business matters and did not involve any public or citizen participation. And most of the implicated communications were between two alleged tortfeasors—Overlook and Garrison—which is insufficient to implicate the associational rights

14

protected by the TCPA. *See id.* at 579, 582. We conclude that Garrison failed to establish by a preponderance of the evidence that its right to associate was triggered by LJC's allegations and, thus, that the TCPA applied under Garrison's associational theory. *See Kawcak*, 582 S.W.3d at 578–82; *Erdner*, 580 S.W.3d at 275; *Pinghua Lei*, 578 S.W.3d at 714–15; *Dyer*, 573 S.W.3d at 426–27.

## IV. CONCLUSION

None of LJC's claims implicated the free-speech, petition, or association rights defined in and protected by the TCPA. Accordingly, the trial court did not err by denying Garrison's motion to dismiss filed under the TCPA's framework. We overrule Garrison's first and second issues.[10] Because we have held the TCPA inapplicable to LJC's claims as pleaded, we need not address Garrison's other issues directed to the remainder of the TCPA's burden-shifting framework and to attorneys' fees. *See* Tex. R. App. P. 47.1. Accordingly, we affirm the trial court's order. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: November 14, 2019

---

[10]These issues are (1) "The trial court erred in denying Garrison's TCPA Motion" and (2) "The TCPA applies to all of LJC's claims, because they are all based on, related to, or in response to Garrison's exercise of its right of free speech, right to petition, and/or right of association."

15