**AFFIRM; and Opinion Filed June 21, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01041-CV

**PINGHUA LEI, JIE ZHU, AND CHIUNG YING "JOANN" CHEN, Appellants**
**V.**
**NATURAL POLYMER INTERNATIONAL CORPORATION**
**AND NPIC SHANGHAI CO., LTD., Appellees**

**On Appeal from the 199th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 199-01725-2018**

## OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Osborne

Appellants Pinghua Lei, Jie Zhu, and Chiung Ying "Joann" Chen appeal the trial court's

order denying their motion to dismiss under the Texas Citizens Participation Act. TEX. CIV. PRAC.

& REM. CODE § 27.001–.011 ("TCPA"). They also appeal the trial court's award of attorney's fees

and court costs to appellees Natural Polymer International Corporation and NPIC Shanghai Co.,

Ltd. (together, "NPIC"),[1] based on a finding that the motion to dismiss was frivolous. *Id.*

§ 27.009(b). We affirm the trial court's order.

---

[1] Appellants assert one argument that applies only to NPIC Shanghai, regarding NPIC Shanghai's "abandonment" of some of its claims. Given our resolution of appellants' first issue, we need not address this contention. Consequently, our references to "NPIC" include both appellees.

NPIC manufactures and distributes natural pet treat products. Lei, Zhu, and Chen are former employees of NPIC who now work for Gambol USA, NPIC's direct competitor in the North American pet treat market. At the time they left NPIC, Zhu was NPIC's Research and Development Director, Lei was a Research and Development Food Scientist, and Chen was a Quality Control Manager.

In its operative petition, NPIC pleaded that:

- Its business is "highly competitive";

- Its expertise in developing the formulas, manufacturing specifications, and manufacturing processes necessary to make its products "has taken many years to develop and fine-tune";

- Lei, Zhu, and Chen "were granted access to highly confidential trade secrets by virtue of their respective positions at NPIC";

- Gambol USA, where Lei, Zhu, and Chen are now employed, is a direct competitor of NPIC in the North American pet treat market;

- Gambol USA is a new wholly-owned subsidiary of Gambol China, "already a major force in the pet treat market in China and other markets," and Lei, Zhu, and Chen have joined Gambol USA "in an apparent attempt to jump start the new competitor using NPIC's trade secrets and confidential information"; and

- Lei and Zhu took NPIC's trade secrets and confidential information with them and provided it to Gambol USA, in violation of their non-disclosure and non-competition agreements with NPIC.

NPIC also pleaded that it is "one of a select few in its industry that has successfully managed to mass produce and market natural pet treats using injection molding," which has enabled it "to develop some of the premier brands in the natural pet products industry." It has developed a four-step design and manufacturing process involving "trade secrets that give NPIC a competitive advantage and are valuable to a competitor," including (1) raw materials used; (2) sourcing of high quality raw materials; (3) precise measurements for each formula ingredient; (4) mixing technique and timing for mixing the formula ingredients; (5) heating temperatures and

times; (6) precise injection molding specifications; and (7) drying temperatures and times. NPIC "enforces stringent quality control measures" for its design and manufacturing process. NPIC alleged that its specifications for the extrusion and soft treat manufacturing process constitute trade secrets "that NPIC expends significant resources to develop, document, and protect." NPIC further alleged that it "expends significant resources to develop, document, and protect trade secrets pertinent to the robotic automation of its manufacturing processes and its extensive food safety and quality control measures." NPIC also pleaded that it has developed and documented trade secrets "pertinent to the processes and procedures it has implemented in its efforts to obtain SQF Level 3 certification, the highest food safety and quality control certification in the industry issued by the Safe Quality Food Institute."

Because their positions with NPIC required access to some or all of NPIC's trade secrets to properly fulfill their job duties, NPIC required Lei, Zhu, and Chen to sign a noncompetition agreement and a nondisclosure agreement. Zhu signed the agreements in 2008, Chen in 2010, and Lei in 2011. The nondisclosure agreement required Lei, Zhu, and Chen to refrain from disclosing or using NPIC's proprietary information as defined in the agreement.

Lei, Zhu, and Chen resigned from NPIC in October and November of 2017 and took positions with Gambol USA. Lei is Gambol USA's Research and Development Manager/Senior Scientist, Zhu is Gambol USA's Chief Operating and Technology Officer, and Chen is a "QC manager." NPIC has pleaded that Zhu and Lei "transferred massive amounts of NPIC information, including NPIC's entire R&D folder maintained on its password-protected network drive, to their own electronic storage devices just prior to leaving NPIC," plugged these electronic storage devices into their Gambol USA-issued laptops and transferred the information, and also transferred the information to other electronic storage devices. The R&D folder "contains voluminous amounts of highly confidential and valuable" trade secrets.

NPIC alleged causes of action for breach of contract against Zhu, Lei, and Chen, and causes of action for misappropriation of trade secrets, unfair competition by misappropriation, breach of fiduciary duty, and conversion against Zhu and Lei. NPIC pleaded for actual damages and equitable relief.

Zhu, Lei, and Chen filed a motion to dismiss under the TCPA, asserting that NPIC's claims were based on, related to, or in response to a list of ten "TCPA-protected 'communications'":

1. The noncompetition and nondisclosure agreements between NPIC and appellants;

2. Appellants' signatures on those agreements;

3. Communications between and among appellants and Gambol USA;

4. Zhu's "confirm[ation] in his deposition that he reports directly to Gambol China's CEO";

5. Zhu's alleged "regular correspond[ence] with [Gambol China's CEO]";

6. Zhu's and Lei's transfer of NPIC information to electronic storage devices;

7. Zhu's and Lei's deletion of "massive amounts of NPIC information";

8. Zhu's and Lei's creation and subsequent transfer of duplicated copies of NPIC information;

9. Zhu's and Lei's disclosure of misappropriated trade secret information to Gambol USA and Gambol China; and

10. Zhu's and Lei's disclosure of NPIC's trade secrets to Gambol.

Appellants argued that NPIC's claims were based on or related to their exercise of the right of free speech, the right of association, and the right to petition. They contended that NPIC's claims were based on their right of free speech because the communications were made in connection with a matter of public concern, specifically a good, product, or service in the marketplace. Further, they contended that "because all of these communications relate to the dog

treats, they all relate to 'health or safety' and 'community well-being' as well." Regarding the right to petition, appellants argued their "statements during their depositions in this case" were communications "in or pertaining to" a "judicial proceeding" and "in connection with an issue under consideration or review by" a "judicial body" under TCPA sections 27.001(4)(A)(1) and 27.001(4)(B). Regarding the right of association, appellants contended they made communications to both NPIC and Gambol USA in contracts they signed with each, to collectively pursue the common interest of "advancing the employers' business prospects."

NPIC responded that (1) the motion was untimely as to Zhu; (2) appellants failed to meet their burden to show that the TCPA applied to NPIC's claims; and (3) even if the TCPA applied, NPIC demonstrated by clear and specific evidence each essential element of its causes of action against appellants. NPIC also contended that appellants' motion was frivolous. In support of this contention, NPIC argued that by granting a temporary injunction, the trial court had already found NPIC had a probable right to relief on its claims. NPIC argued, "[w]ith full knowledge of the significant evidence in this case giving rise to at the very *least* a prima facie case of Plaintiffs' claims, Defendants still filed and set for hearing its [TCPA] Motion." NPIC requested an award of costs and attorney's fees "as a result of having to defend against this Motion." NPIC attached affidavits and other evidence to its response. After further briefing and a hearing, the trial court denied appellants' motion. The court also found that the motion was frivolous, and awarded NPIC its reasonable attorney's fees and costs incurred as a result of the motion. Appellants brought this interlocutory appeal.

## THE TCPA

We recently discussed the purpose and application of the TCPA in *Dyer v. Medoc Health Services, LLC*, No. 05-18-00472-CV, 2019 WL 1090733, at \*3 (Tex. App.—Dallas Mar. 8, 2019, pet. filed). We explained that the TCPA "'protects citizens . . . from retaliatory lawsuits that seek

to intimidate or silence them.'" *Id.* (quoting *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding)). The stated purpose of the TCPA is to "'encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'" *Id.* (quoting CIV. PRAC. & REM. § 27.002); *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam) (*Coleman II*). We construe the TCPA "liberally to effectuate its purpose and intent fully." CIV. PRAC. & REM. § 27.011(b); *see also State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018).

In *Dyer*, we explained the TCPA's procedural steps:

> "To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of [the] First Amendment Rights" protected by the statute. *Coleman II*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), .005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the non-movant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *see Elliott*, 564 S.W.3d at 847. However, even if the non-movant satisfies this requirement, the trial court must still dismiss the claim if the movant "establishes by a preponderance of the evidence each essential element of a valid defense to the [non-movant's] claim." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); *see also Youngkin*, 546 S.W.3d at 679–80.

*Dyer*, 2019 WL 1090733, at *3.

If the court finds that a motion to dismiss filed under the TCPA "is frivolous or solely intended to delay," the court may award court costs and reasonable attorney's fees to the responding party. CIV. PRAC. & REM. § 27.009(b).

STANDARD OF REVIEW

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *Dyer*, 2019 WL 1090733, at *3. "In conducting this review, we consider, in the light most favorable to the non-movant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *5 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.); *see also* CIV. PRAC. & REM. § 27.006(a).

Whether the TCPA applies to NPIC's claims is an issue of statutory interpretation that we also review de novo. *Dyer*, 2019 WL 1090733, at *4. In conducting our analysis, "we ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *Harper*, 562 S.W.3d at 11 (internal quotations omitted). We construe the statute's words according to their plain and common meaning, "unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (internal quotation omitted). We are required to consider both the specific statutory language at issue and the statute as a whole. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding). The supreme court "has specifically directed us to adhere to the definitions supplied by the Legislature in the TCPA." *Dyer*, 2019 WL 1090733, at *4 (citing *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018), and *Youngkin*, 546 S.W.3d at 680). However, in the process of applying those "isolated" definitions, we are required to construe those individual words and provisions in the context of the statute as a whole. *Youngkin*, 546 S.W.3d at 680–81.

We review the decision to award costs and attorney's fees under TCPA section 27.009(b) for abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). We review the amount of fees for legal sufficiency of the evidence. *Id.*

DISCUSSION

As movants, appellants were required to show by a preponderance of the evidence that NPIC's legal action "is based on, relates to, or is in response to" their exercise of the rights of free speech or association or their right to petition. CIV. PRAC. & REM. § 27.005(b). In their first issue, appellants contend the trial court erred by denying their motion to dismiss because the basis for NPIC's claims is appellants' exercise of these rights. Each of these protected rights requires a "communication" as defined by the TCPA. *Id.* § 27.001(2)–(4). "'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1).

The TCPA's definition of "communication" "broadly include[s] both public and private communication." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam). In *Dyer*, there were "communications" in the form of text messages between one of the defendants (Todd Dyer) and one of the plaintiff's former employees (Nicolas Basiti). *Dyer*, 2019 WL 1090733, at *4. But NPIC argues that the following do not constitute "making or submitting of a statement or document" under the TCPA: (1) theft and electronic transfer of trade secrets; (2) appellants' signatures on their noncompetition and nondisclosure agreements; and (3) transfer and dissemination of already-created confidential data files owned by third parties.

NPIC argues that theft by electronic transfer of pre-existing data files owned by a third party and containing the third party's trade secrets is not "making or submitting" either a "statement" or a "document," and therefore is not a "communication" for purposes of the TCPA. In several recent cases, courts have considered whether claims based on conduct involved "communications" under the TCPA. In *Smith v. Crestview NuV, LLC*, 565 S.W.3d 793, 798 (Tex. App.—Fort Worth 2018, pet. denied), the court considered whether Crestview's claim against Smith for aiding in violations of the Texas Securities Act alleged a "communication" under the

TCPA. The court refused to extend the definition of "communication" to allegations that "focused on Smith's actions and inactions," such as "'render[ing] substantial assistance in furtherance of Armstrong's conduct.'" *Id.* Because Crestview's aider-liability claim did not allege a communication, Smith did not meet his burden to show that Crestview's claims were subject to the TCPA. *Id.* In *Bumjin Park v. Suk Baldwin Props., LLC*, No. 03-18-00025-CV, 2018 WL 4905717, at *3–4 (Tex. App.—Austin Oct. 10, 2018, no pet.) (mem. op.), cited in *Smith*, the court concluded that claims for tortious interference with contract and breach of contract were based on conduct and "were not within the TCPA's purview." *Smith*, 565 S.W.3d at 798–99. And in *Krasnicki v. Tactical Entertainment, LLC*, No. 05-18-00463-CV, 2019 WL 2136155, at *3–4 (Tex. App.—Dallas May 16, 2019, no pet. h.), we considered whether a claim based on failure to communicate invoked the TCPA. We explained that "the term 'communication' involves the *making* or *submitting* of a statement or document in any form or medium." We concluded that "the TCPA, as written, does not include the withholding of a statement or document as a communication." *Id.*

Here, NPIC's petition includes claims for both misappropriation and disclosure of trade secrets. Although we agree with NPIC that the theft and electronic transfer of trade secrets, without more, is not a "communication" under the TCPA, NPIC also alleges that appellants disclosed trade secrets to their new employer. In *Kawcak v. Antero Resources Corp.*, No. 02-18-00301-CV, 2019 WL 761480, at *16–17 (Tex. App.—Fort Worth Feb. 29, 2019, pet. denied), there were specific allegations that Kawcak passed Antero's confidential information to a third party. On that basis, the court distinguished its holding in *Crestview NuV* "that simply alleging conduct that has a communication imbedded within it does not create the relationship between the claim and the communication necessary to invoke the TCPA." *Id.* at *17. Although we agree with NPIC that the theft of trade secrets alleged here is not a "communication" for purposes of the TCPA, NPIC's

additional claim that appellants "disclos[ed] NPIC's Trade Secrets to Gambol" falls within the TCPA's broad definition. *See id.*; *see also Adams*, 547 S.W.3d at 894 ("[a]lmost every imaginable form of communication, in any medium, is covered" under the TCPA). Consequently, we consider whether appellants met their burden under section 27.005(b) to show that NPIC's legal action "is based on, relates to, or is in response to" the exercise of their specified rights.[2] *See Dyer*, 2019 WL 1090733, at *4.

### 1. Right of association

Appellants argue that the "basis of" NPIC's claims "includes allegations" that appellants:

- "joined forces" with Gambol USA and Gambol China to promote their common business interests,

- copied, transferred, and disclosed NPIC's trade secret information to Gambol USA and Gambol China to give them a competitive edge over NPIC, and

- lied under oath in this litigation about matters relevant to those efforts.

Appellants contend that the TCPA applies to NPIC's claims that appellants shared or used the NPIC's trade secret or confidential information in furtherance of appellants' competing business enterprise "because that conduct constitutes the exercise of the TCPA-protected right of association." Appellants cite cases from other courts of appeals in support of their argument.[3]

In *Dyer*, we concluded that the TCPA's protection of the right of association did not apply to claims for the misappropriation of trade secrets, conversion, and tortious interference based on communications between the alleged tortfeasors and the "'common interest' of a competing business enterprise that was allegedly using the misappropriated confidential information." *Dyer*, 2019 WL 1090733, at *5. In reaching this conclusion, we followed our own precedent in

---

[2] Given our conclusion that we must proceed to the next step of the analysis, we also assume without deciding that appellants' signatures on their noncompetition and nondisclosure agreements constitute the "making or submitting of a statement or document" under the TCPA.

[3] Appellants cite three cases from the Third Court of Appeals in support of their argument. *See Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 205 (Tex. App.—Austin 2017, pet. dism'd by agr.); *Craig v. Tejas Promotions, LLC*, 550 S.W.3d 287, 295–97 (Tex. App.—Austin 2018, pet. pending); and *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 878–79 (Tex. App.—Austin 2018, pet. pending).

*ExxonMobil Pipeline Co. v. Coleman*, 464 S.W.3d 841, 847 (Tex. App.—Dallas 2015) (*Coleman I*), *rev'd on other grounds*, 512 S.W.3d 895, 900–01 (Tex. 2017) (per curiam) (*Coleman II*), recognizing that other courts of appeals had reached a different conclusion. *See Dyer*, 2019 WL 1090733, at *5 & n.7. Again here, we follow our own precedent and conclude that appellants failed to establish by a preponderance of the evidence that NPIC's claims are based on, relate to, or are in response to appellants' exercise of a right of association as defined by the TCPA. *See id.* at *5– 6 ("Because the text messages between Basiti and Dyer were private communications related to an alleged conspiracy between the two men and did not involve public or citizen's participation, it would be 'illogical' to apply the TCPA to those communications.") (citing *Coleman I*, 464 S.W.3d at 847, and *Kawcak*, 2019 WL 761480, at *17). We conclude that appellants failed to establish by a preponderance of the evidence that NPIC's claims are based on, relate to, or are in response to appellants' exercise of a right of association as defined by the TCPA. *See id.* at *6.

### 2. Right of Free Speech

To constitute an exercise of the right of free speech, the communication must be in connection with a matter of public concern. CIV. PRAC. & REM. § 27.001(3). Appellants contend their communications qualify as an exercise of their right to free speech because the communications were made "in connection with no fewer than three matters of public concern": (1) "natural" pet treats that "promote . . . health"; (2) "economic well-being of NPIC relative to Gambol USA and Gambol China"; and (3) a good or product in the marketplace. *See* CIV. PRAC. & REM. § 27.001(7) (defining "matter of public concern").

In *Staff Care, Inc. v. Eskridge Enterprises, LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *4–5 (Tex. App.—Dallas May 15, 2019, no pet. h.) (mem. op.), we concluded that private communications made in connection with a business dispute did not involve matters of public concern where the statements did not make any mention of health or safety and instead addressed

private economic interests. In *Dyer*, we recognized that "the TCPA applies so long as the movant's statements are 'in connection with' 'issue[s] related to' any of the matters of public concern listed in the statute." *Dyer*, 2019 WL 1090733, at *6 (quoting *Coleman II*, 512 S.W.3d at 900). But we concluded:

> Dyer and Basiti allegedly discussed misappropriating, selling, and using appellees' proprietary software and other confidential information—information appellees had taken specific steps to protect and keep private. We cannot conclude communications discussing allegedly tortious conduct are tangentially related to a matter of public concern simply because the proprietary and confidential information that was to be misappropriated belonged to a company in the healthcare industry or because the alleged tortfeasors hoped to profit from their conduct.

*Id.* The same reasoning applies here. Appellants allegedly duplicated and transferred NPIC's proprietary and trade secret information for use in their new employment that NPIC "had taken specific steps to protect and keep private." *See id.* We cannot conclude that these alleged "communications" are tangentially related to a matter of public concern simply because the proprietary and confidential information at issue belonged to a company in the business of selling pet treats that promote health "or because the alleged tortfeasors hoped to profit from their conduct." *See id.* We conclude appellants failed to establish by a preponderance of the evidence that NPIC's claims are based on, relate to, or are in response to appellants' exercise of their right of free speech as defined by the TCPA. *See id.* at *7.

### 3. Right to petition

Appellants next argue that their deposition testimony in this litigation constitutes their "exercise of the TCPA-protected right to petition" because it is a communication "in or pertaining to a judicial proceeding." *See* CIV. PRAC. & REM. § 27.001(4)(A)(i) (definition of "exercise of the right to petition"). Under TCPA section 27.003(c), all discovery is suspended when a motion to dismiss is filed until the court rules on the motion. *Id.* § 27.003(c). But here, because NPIC sought a temporary restraining order and a temporary injunction, discovery began soon after NPIC's

original petition was filed and before appellants filed their motion to dismiss. Consequently, NPIC's operative petition alleges that Zhu "confirmed in his deposition that he reports directly to Gambol China's CEO and corresponds with him regularly," and "Zhu and Lei both confirmed in their depositions that Lei is the leader of the R&D department for Gambol USA."[4] Appellants contend that "[t]hese allegations target Appellants' TCPA-protected exercise of the right to petition," because "Appellants' under-oath statements in *this* 'judicial proceeding'" are "indisputably" a "communication in or pertaining to" a judicial proceeding.

NPIC responds that it used Zhu's and Lei's deposition testimony as "evidence of" its claims, not as "the basis for" its claims. While this may be true, the TCPA also applies to a legal action that "relates to" a party's exercise of the right to petition. CIV. PRAC. & REM. § 27.003(a). But as we reasoned in *Dyer* with respect to the right of association, "construing the statute such that appellants would have a 'right of association' based solely on Dyer's and Basiti's private communications allegedly pertaining to the misappropriation of appellees' proprietary software and confidential business information is an absurd result that would not further the purpose of the TCPA to curb strategic lawsuits against public participation." *Dyer*, 2019 WL 1090733, at *5.

In *Miller Weisbrod, L.L.P. v. Llamas-Soforo*, 511 S.W.3d 181, 192–93 (Tex. App.—El Paso 2014, no pet.), the court considered the appellant's argument that the term "legal action" used in the TCPA should be construed broadly to include any subsequent pleading filed in a lawsuit, resetting the sixty-day deadline for filing a motion to dismiss with each pleading. The court rejected this contention, explaining:

> After reading the statute as a whole in light of the Legislature's stated purpose for enacting it, we conclude that adopting the Law Firm's proposed interpretation of "legal action" leads to an absurd result. [*In re Estate of*] *Check*, 438 S.W.3d [829] at 836 [(Tex. App.—San Antonio 2014, no pet.)]. The Legislature's stated purpose in enacting the TCPA was to "encourage and safeguard" the exercise of First

---

[4] Appellants also rely on argument of NPIC's counsel at the hearing on their motion to dismiss that Zhu and Lei have both "lied under oath about the number of their devices in their possession that contain NPIC data," an apparent reference to Zhu's and Lei's deposition testimony.

Amendment rights by Texans "to the maximum extent permitted by law" while also protecting the rights of persons to file lawsuits for "demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. It is evident that the Legislature intended to effectuate the purpose of the TCPA by ensuring that courts will dismiss SLAPP suits quickly and without the need for prolonged and costly proceedings. The Law Firm's interpretation of "legal action" supposes that a motion to dismiss could be filed at almost any point, so long as a subsequent pleading qualifies as a "legal action." We see nothing in the statute or its history and purpose to indicate the Legislature intended to create a perpetual opportunity to file a motion to dismiss whenever a pleading qualifies as a "legal action" under Section 27.001(6). TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6)(West Supp. 2014).

*Id.* at 193 (footnote omitted).

Similarly here, to construe the "right to petition" to include responses to discovery requests or deposition questions "supposes that a motion to dismiss could be filed at almost any point," and would be contrary to "the purpose of the TCPA" to "ensur[e] that courts will dismiss SLAPP suits quickly and without the need for prolonged and costly proceedings." *Id.* Further, to construe the TCPA such that appellants exercised a "right to petition" based on their deposition testimony admitting facts relevant to NPIC's allegations that they misappropriated and shared NPIC's confidential and proprietary information with their new employer "is an absurd result that would not further the purpose of the TCPA to curb strategic lawsuits against public participation." *Dyer*, 2019 WL 1090733, at *5. We conclude appellants failed to establish by a preponderance of the evidence that NPIC's claims are based on, related to, or in response to appellants' exercise of their right to petition as defined by the TCPA. *See id.* at *8.

We conclude that appellants failed to satisfy their initial burden of establishing by a preponderance of the evidence that NPIC's legal action was based on, relates to, or is in response to appellants' exercise of the right of free speech, the right to petition, or the right of association. *See* CIV. PRAC. & REM. §§ 27.003, 27.005; *Dyer*, 2019 WL 1090733, at *8. We decide appellants' first issue against them.

### 4. Attorney's fees

In their second issue, appellants contend the trial court abused its discretion in finding that their motion to dismiss was frivolous. They argue that their motion was based on then-current case law applying the TCPA to suits alleging disclosure of confidential information, citing among other authority our opinion in *Elliott v. S&S Emergency Training Solutions, Inc.*, 559 S.W.3d 568, 573–74 (Tex. App.—Dallas 2017), *rev'd on other grounds*, 564 S.W.3d 843 (Tex. 2018). NPIC counters, however, that appellants filed the motion for purposes of delay and to cause NPIC to incur additional legal costs. NPIC argues that by the time appellants filed their motion to dismiss, the parties had already undertaken discovery and NPIC had presented evidence at the injunction hearing establishing a prima facie case on its causes of action, including testimony and forensic evidence gathered from Zhu's and Lei's own electronic storage devices. Consequently, NPIC argues that even if the trial court concluded appellants met their burden to show that the TCPA applied to NPIC's suit, appellants were aware before they filed their motion to dismiss of the clear and specific evidence with which NPIC could meet its burden to establish a prima facie case on each essential element of its claims. *See* CIV. PRAC. & REM. § 27.005(b), (c).

"An attorney's fees award under section 27.009(b) is entirely discretionary and requires the trial court to find the motion was frivolous or solely intended to delay." *Breakaway Practice, LLC v. Lowther*, No. 05-18-00229-CV, 2018 WL 6695544, at *4 (Tex. App.—Dallas Dec. 20, 2018, pet. filed). "Frivolous" is not defined in the TCPA, but one court has explained that "the word's common understanding contemplates that a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit." *Sullivan*, 551 S.W.3d at 857 (internal quotations and citations omitted).

Here, by the time appellants filed their TCPA motion, discovery had been taken and the trial court had heard evidence that, for example, Zhu had copied and transferred NPIC's research

and development folder from NPIC's password-protected network drive to the unprotected external hard drive on his laptop, despite his representation in his NPIC exit interview that he had returned all NPIC information. NPIC alleged and provided evidence in its TCPA response that "[b]ased on a review by NPIC's IT department of forensic reports in comparison with data on NPIC's Network, NPIC has discovered that Zhu's and Lei's electronic storage devices contain in excess of one million files with data originating from NPIC's Network." All of NPIC's claims, including breach of contract, misappropriation of trade secrets, unfair competition, conversion, and breach of fiduciary duty, arose from its allegations that Zhu, Lei, and Chen had "joined forces with Gambol USA in an apparent attempt to jump start the new competitor using NPIC's trade secrets and confidential information" in violation of their nondisclosure agreements and common law obligations, as NPIC alleged in its operative petition. The trial court had already heard evidence supporting NPIC's pleaded causes of action at the time appellants filed their motion to dismiss. We conclude it was within the trial court's discretion to find that appellants' motion to dismiss was frivolous. *See* CIV. PRAC. & REM. § 27.009(b). We decide appellants' second issue against them.

## CONCLUSION

We affirm the trial court's order denying appellants' motion to dismiss and awarding costs and reasonable attorney's fees to appellees based on the trial court's finding that appellants' motion was frivolous.

181041F.P05

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

–16–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

PINGHUA LEI, JIE ZHU, AND CHIUNG YING "JOANN" CHEN, Appellants

No. 05-18-01041-CV          V.

NATURAL POLYMER
INTERNATIONAL CORPORATION
AND NPIC SHANGHAI CO., LTD.,
Appellees

On Appeal from the 199th Judicial District Court, Collin County, Texas
Trial Court Cause No. 199-01725-2018.
Opinion delivered by Justice Osborne;
Justices Myers and Nowell, participating.

In accordance with this Court's opinion of this date, the trial court's order denying the motion of appellants Pinghua Lei, Jie Zhu, and Chiung Ying "Joann" Chen to dismiss and awarding costs and reasonable attorney's fees to appellees Natural Polymer International Corporation and NPIC Shanghai Co., Ltd. is **AFFIRMED**.

It is **ORDERED** that appellees Natural Polymer International Corporation and NPIC Shanghai Co., Ltd. recover their costs of this appeal from appellants Pinghua Lei, Jie Zhu, and Chiung Ying "Joann" Chen.

Judgment entered this 21st day of June, 2019.