**Affirmed; Opinion Filed January 23, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00261-CV

**RICHARD GOLDBERG, KENNETH GOLDBERG, GEOMET RECYCLING, LLC, JOSH APPLEBAUM, ALICIA MCKINNEY, ELOISA MEDINA, LEE WAKSER, SPENCER LIEMAN, MIKEL SHECHT, LAURA MYERS, HENRY JACKSON, AND KELLY COUCH, Appellants**

**V.**

**EMR (USA HOLDINGS) INC., EMR GOLD RECYCLING, LLC, GOLD METAL RECYCLERS MANAGEMENT, LLC, GOLD METAL RECYCLERS, LTD., GMY ENTERPRISES, LLC, GMY, LTD., GOLD METAL RECYCLERS—GAINESVILLE, DLLC, GOLD METAL RECYCLERS—FORT WORTH, LLC, GOLD METAL RECYCLERS—OKLAHOMA, LLC, AND GOLDBERG INDUSTRIES, INC., Appellees**

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-14064**

## OPINION ON REHEARING

Before Justices Myers and Whitehill[1]
Opinion by Justice Myers

This Court's opinion of August 22, 2019, is withdrawn. The following is the opinion of

this Court.

This case concerns the applicability of the Texas Citizens Participation Act (TCPA) to

breach of contract and various commercial torts, including misappropriation of trade secrets and

---

[1] Justice Ada Brown was a member of the panel when this case was submitted. Subsequently, Justice Brown was appointed to the United States District Court for the Northern District of Texas. Accordingly, she did not participate in the issuance of this opinion.

breach of fiduciary duty.  *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011.[2]  Appellees

(Plaintiffs) sued appellants (Defendants).  Defendants moved for dismissal of the claims, asserting

that Plaintiffs' "legal action" is based on, relates to, or is in response to their communications that

were protected under the TCPA.  The trial court denied Defendants' motion to dismiss.  Defendants

bring five issues in this interlocutory appeal contending the trial court erred by denying their

motion to dismiss because:  (1) Plaintiffs' claims are based on, relate to, or are in response to

Defendants' exercise of their right of association or free speech; (2) Plaintiffs did not establish that

the commercial-speech exemption applied to their claims; (3) Plaintiffs did not offer prima facie

proof of the elements of each claim as to each Defendant; (4) the trial court abused its discretion

by failing to exclude certain evidence Plaintiffs offered to establish a prima facie case; and (5)

Plaintiffs failed to establish that the TCPA violates the constitutional rights to jury trial, open

courts, and due process.[3]  *See id.* § 51.014(a)(12) (authorizing interlocutory appeal from denial of

motion to dismiss under TCPA).  We conclude the trial court did not err by denying Defendants'

motion to dismiss because Defendants failed to prove by a preponderance of the evidence that

Plaintiffs' claims are based on, relate to, or are in response to Defendants' exercise of their right

of association or free speech.  We affirm the trial court's order denying Defendants' motion to

dismiss.

## BACKGROUND

From 1976 to 2011, Kenneth Goldberg co-owned and operated a scrap-metal recycling

company called Gold Metal Recyclers.  In 2011, Goldberg sold Gold Metal to EMR Holdings for

---

[2] The Texas Legislature amended the TCPA effective September 1, 2019.  Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687.  Because the underlying lawsuit was filed before September 1, 2019, the law in effect before September 1 applies.  *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, *amended by* Act of May 24, 2013, 83d Leg., R.S., ch. 1042, §§ 1–3, 5, 2013 Tex. Gen. Laws 2499–2500.  All citations to the TCPA are to the version before the 2019 amendments took effect.

[3] Appellees filed a conditional cross-point challenging two orders denying discovery.  Because we affirm the trial court's judgment, we do not address the cross-point.

over $100 million. After the sale, Goldberg stayed on as manager of Gold Metal, now part of EMR, and he agreed not to compete with EMR and its affiliated entities (Plaintiffs) for three years after leaving employment with the company. Goldberg signed confidentiality agreements promising not to use Plaintiffs' confidential information for the benefit of "any person" other than Plaintiffs.

Goldberg left Gold Metal and, after waiting three years, he opened a scrap-metal recycling business, Geomet Recycling. To staff Geomet, he hired some of Plaintiffs' employees.

Five months after Geomet went into business, Plaintiffs sued Goldberg, Geomet, and Plaintiffs' former employees who had gone to work for Geomet for violations of the Texas Uniform Trade Secrets Act (TUTSA), breach of contract, breach of fiduciary duty, tortious interference with contract, and conspiracy. Plaintiffs sought monetary damages and injunctive relief.

Defendants moved for dismissal of the suit under the TCPA, asserting Plaintiffs' lawsuit is based on, relates to, or is in response to Defendants' exercise of the right of association or free speech. Plaintiffs filed a response to the motion to dismiss.

The trial court denied Defendants' motion to dismiss without stating a reason for the denial of the motion and without making findings of fact and conclusions of law. The trial court also entered a temporary restraining order prohibiting Defendants Goldberg, Josh Applebaum, Laura Myers, "and all entities or individuals acting with them or at their direction . . . from directly or indirectly using, disclosing, replicating, or otherwise misappropriating for their own individual or collective use or benefit . . . any of Plaintiffs' Trade Secrets or Confidential Information."

**TEXAS CITIZENS PARTICIPATION ACT**

The TCPA permits a defendant to move for dismissal of a legal action that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right

–3–

of association." CIV. PRAC. § 27.003(a). The statute's purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002.

Determination of a motion to dismiss under the TCPA is a "three-step decisional process." *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, No. 18-0656, 2019 WL 6971659, at *3 (Tex. Dec. 20, 2019); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018); *see also Duncan v. Acius Group, LP*, No. 05-18-01432-CV, 2019 WL 4392507, at *2 (Tex. App.—Dallas Sept. 13, 2019, no pet.) (mem. op.) (determination of TCPA motion to dismiss "involves up to three steps"). In step 1, the movant for dismissal has the burden of showing by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the movant's exercise of one of those rights. CIV. PRAC. § 27.005(b). If the movant does so, then the procedure moves to step 2, and the burden of proof shifts to the nonmovant bringing the legal action to "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). If the nonmovant meets this burden, then the procedure moves to step 3, and the burden of proof shifts back to the movant to "establish[] by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

The evidence considered by the trial court in determining a motion to dismiss includes "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." CIV. PRAC. § 27.006(a). However, the plaintiff's pleadings are usually "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936)).

When a party appeals the denial of its motion to dismiss under the TCPA, the appeal stays the commencement of the trial and "all other proceedings in the trial court pending resolution of that appeal." CIV. PRAC. § 51.014(b).

## PLAINTIFFS' CLAIMS

When Goldberg sold Gold Metal to EMR, the sale agreement contained a nondisclosure provision stating each "Seller," which included Goldberg, agreed "that all customer, prospect, and marketing lists, sales data, intellectual property, employee information, proprietary information, trade secrets and other confidential information" of Gold Metal before the sale would "be owned exclusively by EMR" after the closing of the sale. The provision also stated that each "Seller," including Goldberg, promised to treat the information as confidential and promised "not to make use of such information for its own purposes or for the benefit of any other Person."

After the sale, Goldberg went to work for one of the Plaintiffs as its chief executive officer. His employment agreement contained a nondisclosure provision stating he agreed that he would not, even after termination of his employment, "disclose to or use for the benefit of any person, corporation or other entity, or for himself, any and all files, trade secrets or other confidential information concerning the internal affairs of [Plaintiffs], including, but not limited to, information pertaining to its clients, services, products, earnings, finances, operations, methods or other activities." This nondisclosure provision did not apply to information that was "of public record or is generally known, disclosed or available to the general public or the industry generally." The employment agreement also included noncompetition provisions in which Goldberg promised not to own or work for a competing company for one year after his employment with Plaintiffs ceased. This noncompetition provision also prohibited Goldberg from hiring any of Plaintiffs' employees for one year after he left Plaintiffs. Goldberg was also on EMR's board of directors and promised not to compete with EMR for three years after he left the board of directors.

–5–

Plaintiffs' employees, including the other individual Defendants, received Plaintiffs' employee handbook. The handbook contained a nondisclosure provision about confidential information:

> During employment at the Company, employees may acquire confidential information belonging to the Company such as, but not limited to, customer information, accounts, prospects, trade secrets, procedures, sales data, supply sources, . . . electronic files, and other specific information concerning the Company, its suppliers, its customers, and its employees. . . . Employees agree that all such information is the exclusive property of the Company and that they will not at any time divulge or disclose to anyone, except in the responsible exercise of an employee's job, any such information, whether or not the information has been designated specifically as confidential. The unauthorized release or removal of such information will be viewed as grounds for discipline, up to and including termination of employment and possible legal action against employee.

The handbook also stated that "[p]rograms and information on computers are to be treated as proprietary and confidential" and that "[e]mployees may not use computers to disclose confidential and proprietary information."

Plaintiffs had a computer system called Trade 2. According to Andrew Sheppard, the chief operating officer of Southern Recycling, LLC, Trade 2 "contain[ed] a compilation of information of virtually all of EMR Group's commercial data, including the operational transactions that take place within EMR Group (and its related companies), as well as inventory control and virtually all aspects of the relationships with customers [suppliers] and consumers [purchasers]." Many of Plaintiffs' purported trade secrets were contained within Trade 2. When they worked for Plaintiffs, all the individual Defendants had at least some access to parts of Trade 2.

Goldberg resigned from EMR's board of directors in September 2013, and he resigned from his CEO position in September 2014. The noncompete agreements expired by September 17, 2016.

In May 2017, Goldberg formed a new company, Geomet, which would be competing directly with Plaintiffs.

From November 2016 and continuing through 2017, many of Plaintiffs' employees resigned and ultimately went to work for Geomet. Many of these employees, when they worked for Plaintiffs, communicated with scrap-metal suppliers and purchasers to buy and sell the scrap metal that constituted Plaintiffs' business. When these employees went to work for Geomet, they contacted some of those same suppliers and purchasers.

A few of the employees, before they resigned from Plaintiffs, e-mailed to their personal e-mail accounts information from Plaintiffs' computer database, including seller and purchaser lists, inventory of some of Plaintiffs' facilities, environmental reports, and information about Plaintiffs' employees. Plaintiffs considered all this information to be trade secrets. Some of the employees took cell phones, laptop computers, and computer tablets belonging to Plaintiffs with them when they resigned. Some of these items were later returned to Plaintiffs but with records of their use erased. Plaintiffs hired a company to examine these computers, phones, and tablets. The company determined that USB storage devices such as external hard drives had been attached to some of the computers and others had accessed data-storage websites.

Plaintiffs complain that Goldberg violated his employment agreement by contacting Plaintiffs' employees and persuading them to resign and work for Geomet. Plaintiffs also complain that the individual Defendants breached the nondisclosure provisions of Plaintiffs' employee handbook by downloading information and sending it to their personal e-mail accounts or by using external hard drives and data-storage devices and websites. Plaintiffs also complain that the individual Defendants, after they went to work for Geomet, violated Plaintiffs' employee handbook by contacting scrap-metal suppliers and purchasers who were also suppliers and purchasers from Plaintiffs. Plaintiffs complain that the individual Defendants contacted the same people at the purchasers and suppliers with whom they did business while employed by Plaintiffs. Some of these contacts resulted in purchases and sales of scrap metal by Geomet. Plaintiffs assert

that if the purchasers and suppliers had come to them instead of Geomet, Plaintiffs would have made a profit from those purchases and sales.

Plaintiffs also complain about the Pecan House incident. Pecan House agreed to send a load of scrap metal to one of the Plaintiffs, Gold Metal Recyclers, and Gold Metal Recyclers made an advance payment to Pecan House. According to Plaintiffs, before Pecan House delivered the scrap metal, Defendant Mikel Shecht falsely represented to Pecan House that Gold Metal Recyclers had shut down and moved its operations to Geomet. After talking to Shecht, Pecan House delivered the load of scrap metal to Geomet instead of to Gold Metal Recyclers. Defendant Henry Jackson signed for the load when it arrived at Geomet.

Plaintiffs' assertions of their damages include the lost value of the goodwill in the purchase from Goldberg, the lost sales due to Defendants' contacting the purchasers who did business with Plaintiffs, and the loss to Plaintiffs' inventory of scrap metal they would have purchased from the scrap-metal providers had Defendants not contacted Plaintiffs' suppliers and purchased it. Plaintiffs assert they would have made a profit on the scrap-metal Defendants purchased. Plaintiffs also seek disgorgement of Defendants' profits from doing business with the suppliers and purchasers. Plaintiffs also claim as damages the costs of recruiting and training new employees for the positions previously held by Plaintiffs' employees who went to work for Geomet. Plaintiffs also seek injunctive relief to bar Defendants from using or otherwise misappropriating Plaintiffs' trade secrets or other confidential information.

## APPLICATION OF THE TCPA

In their first issue, Defendants contend the trial court erred to the extent the court determined Defendants failed to prove by a preponderance of the evidence that Plaintiffs' claims were based on Defendants' exercise of their right of association or free speech.

The trial court's application of the TCPA is a matter of statutory interpretation that we review de novo. *Youngkin*, 546 S.W.3d at 680. In conducting our analysis, "we ascertain and give effect to the Legislature's intent as expressed in the language of the statute." *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008)); *see also Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011) ("Legislative intent . . . remains the polestar of statutory construction." (internal citations omitted)). We construe the statute's words according to their plain and common meaning, "unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *Youngkin*, 546 S.W.3d at 680; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results.").

We consider both the specific statutory language at issue and the statute as a whole. *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013) (orig. proceeding); *see also Youngkin*, 546 S.W.3d at 680 ("[L]egislative intent derives from an act as a whole rather than from isolated portions of it."). We endeavor to read the statute contextually, giving effect to every word, clause, and sentence. *In re Office of Att'y Gen.*, 422 S.W.3d at 629. We adhere to the definitions supplied by the legislature in the TCPA. *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Youngkin*, 546 S.W.3d at 680. In applying those definitions, we must construe those individual words and provisions in the context of the statute as a whole. *Youngkin*, 546 S.W.3d at 680–81.

**Step 1: Whether Plaintiffs' Claims Are Based on, Relate to, or Are in Response to Defendants' Exercise of Protected Rights**

For Defendants to be entitled to dismissal under the TCPA, they had to prove by a preponderance of the evidence that Plaintiffs' claims are based on, relate to, or are in response to Defendants' exercise of the right of association or free speech.[4] CIV. PRAC. § 27.005(b).

"'Exercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." CIV. PRAC. § 27.001(2). Exercise of the right of association requires that the "nature of the communication between individuals who join together must involve public or citizen's participation." *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 426 (Tex. App.—Dallas 2019, pet. denied) (internal quotation marks omitted).

"'Exercise of the right of free speech' means a communication made in connection with a matter of public concern." CIV. PRAC. § 27.001(3). "'Matter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; . . . or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7). "The phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' as opposed to purely private matters." *Creative Oil & Gas*, 2019 WL 6971659, at *6 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)); *see also Lei v. Natural Polymer Int'l Corp.*, 578 S.W.3d 706, 715 (Tex. App.—Dallas 2019, no pet.) (private communications in connection with a business dispute do not involve matters of public concern when the communications address only private economic interests and make no mention of health or safety). Not all communications made in connection with a matter related to health or safety, environmental, economic, or community well-being, or a good, product, or service in the marketplace will constitute the

---

[4] The TCPA also applies to a legal action that is based on, relates to, or is in response to a party's exercise of the right to petition. CIV. PRAC. § 27.003. Defendants do not assert the exercise of the right to petition is an issue in this case.

exercise of the right of free speech under the TCPA. The communications themselves must relate to a matter of public concern. *See Creative Oil & Gas*, 2019 WL 6971659, at \*5–6. A communication related to a good, product, or service in the marketplace must have some relevance to a public audience of potential buyers or sellers and not be simply a communication between private parties of matters of purely private concern. *Id.* at \*5.

Central to the definitions of both rights is "a communication," which the TCPA states "includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Civ. Prac. § 27.001(1).

We will apply these definitions to the evidence to determine whether Defendants proved by a preponderance of the evidence that Plaintiffs' claims are based on, relate to, or are in response to Defendants' communications that constitute the exercise of the right of association or free speech.

### Transfer of Electronic Information

Plaintiffs alleged Myers, Medina, and Shecht e-mailed Plaintiffs' confidential information to themselves. Plaintiffs alleged Applebaum, Medina, Jackson, Shecht, Richard Goldberg, and Wakser connected data-storage devices to Plaintiffs' computers or accessed data-storage websites from those computers. Plaintiffs also alleged Myers took her company-issued phone with her when she left EMR. They also alleged, "Mr. Applebaum's cell phone was reset to factory settings, such that the data thereon was destroyed, in violation of the Handbook." Plaintiffs asserted these actions violated TUTSA and constituted breaches of fiduciary duties.

To determine whether Defendants met their burden under step 1, we must determine whether the alleged electronic transfers of information were "communication[s]" as defined in the TCPA. "'Communication' includes the making or submitting of a statement or document in any form or medium, including . . . electronic." Civ. Prac. § 27.001(1). In these legal actions,

–11–

Plaintiffs alleged Defendants transferred electronic documents to which Defendants had access on Plaintiffs' computers by e-mailing the documents to themselves or by saving the documents to other drives or data-storage websites. The act of e-mailing a document to oneself or electronically saving a document to a drive or data-storage website which no one else views or has access is not a "communication" as defined by section 27.001(1) because it does not "make" or "submit" the document. *See Lei*, 578 S.W.3d at 713 ("the theft and electronic transfer of trade secrets, without more, is not a 'communication' under the TCPA").

Electronically copying an existing document onto another drive, data-storage website, or the e-mailer's other inbox does not "make" a document because the document was already made. *See Make*, WEBSTER'S 3RD NEW INT'L DICTIONARY (1981) ("to cause to exist, occur or appear"; "to cause to be or become"). "Submitting" a document necessarily requires disclosing or making the document available to another person. Webster's defines "submit" as meaning "to send or commit for consideration, study, or decision"; "refer"; "to present or make available for use or study"; "offer"; and "supply." *Submit*, *id.* Webster's online dictionary defines "submit" as meaning "to present or propose to another for review, consideration, or decision"; "to deliver formally"; and "to put forward as an opinion or contention." *Submit*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/submit (last visited Jan. 23, 2020). The act of e-mailing a document to oneself or saving a document onto a separate drive or data-storage website under the same person's control, without more, does not "submit" a document.

Plaintiffs also alleged certain Defendants took a computer, a computer tablet, and cell phones with them when they left Plaintiffs' employment. Defendants' acts of taking the computer, tablet, and cell phones with the information saved on those devices were not communications because those actions did not make or submit a document. Plaintiffs have not alleged, and

–12–

Defendants have not presented evidence showing, that these claims are based on, relate to, or are in response to a communication by Defendants.

Plaintiffs' allegation that Applebaum destroyed data on his cell phone does not involve the making or submitting of a document. Therefore, his destruction of data was not a communication.

Defendants did not meet step 1 as to the claims involving these actions, and the trial court did not err by denying Defendants' motion to dismiss as to these claims.

### Communications Between Defendants and the Purchasers and Suppliers

Plaintiffs alleged Defendants violated TUTSA, breached fiduciary duties, and tortiously interfered with contracts by using Plaintiffs' trade secrets and confidential and proprietary information to contact purchasers and suppliers. Plaintiffs alleged these contacts resulted in Geomet's purchasing scrap metal from the suppliers or selling scrap metal to the purchasers.

The contacts with purchasers and suppliers generally involved Defendants' sending e-mails to individual purchasers and suppliers offering to buy or sell scrap metal. Other e-mails from Defendants contained information and discussion concerning transactions for the purchase or sale of scrap metal. In the Pecan House incident, Defendants falsely told a scrap-metal supplier that one of the Plaintiffs had ceased operations and that the supplier should deliver its load of scrap to Geomet. The e-mails were communications because they were made by Defendants and submitted to the purchasers and suppliers. The communications were "made in connection with" "an issue related to . . . a good, product, or service in the marketplace," scrap metal. However, all these communications were private communications between private parties about purely private economic matters. Therefore, these communications were not "made in connection with a matter of public concern" under the TCPA. *See Creative Oil & Gas¸* 2019 WL 6971659, at \*5–6.

Defendants also argue their communications involved a matter of public concern because they were related to health or safety, or environmental, economic, or community well-being

–13–

because they involved recycling scrap metal. *See* CIV. PRAC. § 27.001(7)(A), (B). Kenneth Goldberg testified in his affidavit:

> Geomet's business is as a dealer in the chain of scrap metal recycling, taking nonferrous scrap such as copper wire or aluminum cans, baling or boxing them by the hundreds or thousands of pounds, and moving them to other recycling dealers, or to manufacturers who separate, melt, and reuse the materials. The scrap metal recycling business diverts tons of materials away from landfills. Scrap metal recycling also saves energy in the manufacturing process, compared to producing metals from raw earth materials, conserving raw materials and natural resources. As such, scrap metal recycling results in more environmentally friendly products, and is integral to the environment, the economy, and the well-being of the community.

Even though Defendants' business of purchasing and selling scrap metal may have many beneficial effects and involve matters of health or safety, and environmental, economic, or community well-being, the communications in this case did not involve those matters. Instead, they concerned Defendants' offers to buy or sell scrap metal. The communications did not discuss the benefits of recycling, nor did the communications seek to promote health or safety, or environmental, economic, or community well-being. Instead, they were private communications regarding private commercial transactions for the purchase and sale of a commodity, scrap metal. Plaintiffs' claims are related to Defendants' use of Plaintiffs' confidential information to make purchases and sales. Plaintiffs' claims are not related to any communications by Defendants concerning the beneficial effects of recycling provided by the scrap-metal industry.

We conclude Defendants failed to meet their burden in step 1 of proving by a preponderance of the evidence that these claims are based on, relate to, or are in response to Defendants' exercise of the right of free speech. The trial court did not err by denying Defendants' motion to dismiss as to these claims.

**Defendants' Hiring Plaintiffs' Employees**

Plaintiffs alleged Defendants violated TUTSA, breached fiduciary duties, and tortiously interfered with contracts by hiring Plaintiffs' employees to work for Geomet. Plaintiffs also

–14–

alleged Goldberg breached his contract with Plaintiffs by hiring Plaintiffs' employees. Defendants argue that these claims are based on, relate to, or are in response to Defendants' communications with Plaintiffs' employees. Defendants assert these communications constitute the exercise of their right of association and free speech.

For Defendants' communications with Plaintiffs' employees to constitute the exercise of the right of association, the communications must have involved public or citizen's participation. *See Dyer*, 573 S.W.3d at 426. Generally, private communications between an employer and a potential employee do not involve public or citizen's participation. *See Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *6 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.). Nothing in the record shows Defendants' communications with Plaintiffs' employees to hire them to work at Geomet involved any manner of public or citizen's participation. We conclude Defendants failed to prove by a preponderance of the evidence that their communications with Plaintiffs' employees were the exercise of the right of association.

For Defendants' communications in hiring Plaintiffs' employees to have involved the exercise of the right of free speech, those communications must have been in connection with a matter of public concern. *See* CIV. PRAC. § 27.001(3). The only evidence of the substance of these communications is that Geomet offered seven of Plaintiffs' employees three dollars more per hour than Plaintiffs paid them and that Geomet offered positions to some of Plaintiffs' employees. Defendants have not presented evidence that any of their communications in hiring Plaintiffs' employees were "made in connection with a matter of public concern." *Id.* Accordingly, we conclude Defendants failed to prove by a preponderance of the evidence that Plaintiffs' claims concerning Defendants' communications for hiring Plaintiffs' employees are based on, relate to, or are in response to Defendants' exercise of the right of free speech.

–15–

The trial court did not err by denying Defendants' motion to dismiss the claims for breach of contract, breach of fiduciary duty, and tortious interference with contract concerning Defendants' communications to hire Plaintiffs' employees to work for Geomet.

**Goldberg's Tortious Interference with Contract**

Plaintiffs alleged Goldberg tortiously interfered with Plaintiffs' contracts with the individual Defendants by "misusing [Plaintiffs'] confidential information and inducing such individual Defendants to misuse [Plaintiffs'] confidential information." From the rest of the pleading of this cause of action, it appears Goldberg's alleged misuse of confidential information to tortiously interfere with Plaintiffs' contracts with the individual Defendants concerned his hiring the individual Defendants. As discussed above, Defendants, including Goldberg, failed to prove by a preponderance of the evidence that their communications regarding hiring Plaintiffs' employees involved public or citizen's participation or were in connection with a matter of public concern. Therefore, the communications were not an exercise of the right of association or free speech.

Concerning Plaintiffs' allegation that Goldberg induced the other individual Defendants to misuse Plaintiffs' confidential information, Goldberg has not shown that the allegation was based on any communication by him or that any communications that induced the other Defendants to misuse Plaintiffs' confidential information constituted the exercise of the right of association or free speech.

Goldberg failed to show by a preponderance of the evidence that he met his burden under step 1 as to Plaintiffs' claim that he tortiously interfered with Plaintiffs' contracts with the other individual Defendants. The trial court did not err by denying the motion to dismiss as to this claim.

**Conspiracy**

Plaintiffs alleged Defendants engaged in a conspiracy with the unlawful purpose of: "diverting business opportunities from the Plaintiffs to the Defendants by misappropriation of the Plaintiffs' trade secrets, misuse of the Plaintiffs' confidential and proprietary information, and interfering with the contracts with employees of [Plaintiffs]." For Defendants' communications to constitute the exercise of the right of association, they must have involved public or citizen's participation. Defendants failed to prove by a preponderance of the evidence that their communications involved any matters of public or citizen's participation. Therefore, their communications were not exercises of the right of association. *See Dyer*, 573 S.W.3d at 426.

The factual bases for Plaintiffs' conspiracy claims are the same as for their breach-of-contract and tort claims, discussed above. Defendants argue they met step 1 as to the conspiracy claims for the same reasons as they did for the underlying causes of action. However, as discussed above, Defendants failed to meet step 1 as to any of Plaintiffs' causes of action. Therefore, Defendants have failed to meet step 1 as to the conspiracy cause of action. The trial court did not err by denying the motion to dismiss this claim.

**Injunctive Relief**

Plaintiffs also sought injunctive relief against Defendants. The trial court entered a temporary restraining order prohibiting Goldberg, Applebaum, Myers, "and all entities or individuals acting with them or at their direction . . . from directly or indirectly using, disclosing, replicating, or otherwise misappropriating for their own individual or collective use or benefit . . . any of Plaintiffs' Trade Secrets or Confidential Information." To be entitled to an injunction, a plaintiff must plead and prove (1) a wrongful act; (2) imminent harm; (3) irreparable injury; and (4) no adequate remedy at law. *Leibovitz v. Sequoia Real Estate Holdings, L.P.*, 465 S.W.3d 331, 350 (Tex. App.—Dallas 2015, no pet.).

–17–

Plaintiffs' claim for injunctive relief was based on the same facts as their causes of action for damages. Defendants do not make any different arguments to support their assertions that the claim for injunctive relief is based on, relates to, or is in response to Defendants' exercise of the right of free speech and association. For a communication to constitute the right of association under the TCPA, the communication "must involve public or citizen's participation." *Dyer*, 573 S.W.3d at 426. For a communication to constitute the exercise of the right of free speech because it involves a matter of public concern related to a good, product, or service in the marketplace, "the communication must have some relevance to a public audience of potential buyers or sellers" and not simply be a communication between private parties of matters of purely private concern. *Creative Oil & Gas*, 2019 WL 6971659, at *5–6. None of the communications on which Plaintiffs' pleaded their case or in the other evidence presented to the trial court show any matter of "public or citizen's participation" or "relevance to a public audience of potential buyers and sellers." Nor does the record show Plaintiffs' claims are based on, relate to, or are in response to communications by Defendants related to issues of health or safety or environmental, economic, or community well-being. Instead, the pleadings and other evidence show Plaintiffs' claims were in response to Defendants' alleged transfer of trade secrets and their private communications with other private parties for the purchase and sale of scrap metal or for the potential hiring of employees. The trial court did not err by denying Defendants' motion to dismiss Plaintiffs' claim for injunctive relief.

## CONCLUSION

We conclude Defendants have failed to prove by a preponderance of the evidence that Plaintiffs' claims are based on, relate to, or are in response to Defendants' exercise of the right of association or free speech as those rights are defined in the TCPA and interpreted by the supreme

court and this Court.  We overrule Defendants' first issue.  Defendants' remaining issues are dependent on our sustaining the first issue.  Accordingly, we need not address the other issues.

We affirm the trial court's order denying Defendants' motion to dismiss.


/Lana Myers/
LANA MYERS
JUSTICE


180261HF.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICHARD GOLDBERG, KENNETH
GOLDBERG, GEOMET RECYCLING,
LLC, JOSH APPLEBAUM, ALICIA
MCKINNEY, ELOISA MEDINA, LEE
WAKSER, SPENCER LIEMAN, MIKEL
SHECHT, LAURA MYERS, HENRY
JACKSON, AND KELLY COUCH,
Appellants

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-14064.
Opinion delivered by Justice Myers. Justice
Whitehill participating.

No. 05-18-00261-CV        V.

EMR (USA HOLDINGS) INC., EMR
GOLD RECYCLING, LLC, GOLD
METAL RECYCLERS MANAGEMENT,
LLC, GOLD METAL RECYCLERS,
LTD., GMY ENTERPRISES, LLC, GMY,
LTD., GOLD METAL RECYCLERS—
GAINESVILLE, DLLC, GOLD METAL
RECYCLERS—FORT WORTH, LLC,
GOLD METAL RECYCLERS—
OKLAHOMA, LLC, AND GOLDBERG
INDUSTRIES, INC., Appellees

Appellees' motion for rehearing is **GRANTED**, and appellants' motion for rehearing is **DENIED**.

This Court's judgment of August 22, 2019 is **VACATED**; the following is now the judgment of
this Court.

In accordance with this Court's opinion of this date, the order of the trial court denying appellants'
motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellees EMR (USA HOLDINGS) INC., EMR GOLD
RECYCLING, LLC, GOLD METAL RECYCLERS MANAGEMENT, LLC, GOLD METAL
RECYCLERS, LTD., GMY ENTERPRISES, LLC, GMY, LTD., GOLD METAL
RECYCLERS—GAINESVILLE, DLLC, GOLD METAL RECYCLERS—FORT WORTH,

–20–

LLC, GOLD METAL RECYCLERS—OKLAHOMA, LLC, AND GOLDBERG INDUSTRIES, INC. recover their costs of this appeal from appellants RICHARD GOLDBERG, KENNETH GOLDBERG, GEOMET RECYCLING, LLC, JOSH APPLEBAUM, ALICIA MCKINNEY, ELOISA MEDINA, LEE WAKSER, SPENCER LIEMAN, MIKEL SHECHT, LAURA MYERS, HENRY JACKSON, AND KELLY COUCH.

Judgment entered this 23rd day of January, 2020.