**Affirm and Opinion Filed November 28, 2022**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-21-00008-CV**

_____

**TIFFANNY JONES, M.D. AND TJONESIVFMD, PLLC, Appellants**

**V.**

**FRISCO FERTILITY CENTER, PLLC, D/B/A DALLAS IVF, Appellee**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-02739-2020**

## OPINION

Before Justices Molberg, Nowell, and Goldstein
Opinion by Justice Molberg

Dr. Tiffanny Jones and TJONESIVFMD, PLLC (collectively, Dr. Jones), appeal the denial by operation of law of their Texas Citizens Participation Act (TCPA)[1] motion to dismiss a petition for injunctive relief of Frisco Fertility Center, PLLC (FFC or the Center), filed in aid of and ancillary to FFC's pending arbitration claims against Dr. Jones.

In a cross-appeal, FFC argues the trial court erred by denying its request for attorney's fees and costs under section 27.009(b) of the TCPA.

_____

[1] TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.

Because FFC's petition for injunctive relief does not constitute a legal action within the meaning of the TCPA in the circumstances presented here, and because the trial court did not abuse its discretion in failing to award fees and costs to FFC, we affirm.

## I. BACKGROUND

### a. FFC's arbitration demand and district court petition

On May 29, 2020, FFC filed a demand for arbitration against Dr. Jones with the American Arbitration Association (AAA). FFC claimed Dr. Jones misappropriated trade secrets, violated the Texas Uniform Trade Secrets Act (TUTSA), breached her employment agreement, and breached her fiduciary duties to FFC. After the parties failed to agree to utilize the AAA's emergency rules for injunctive relief sought by FFC, FFC filed its Original Verified Petition and Application for Emergency Relief in the district court on June 3, 2020. FFC sought a temporary restraining order, temporary injunction, and permanent injunction. It also requested—"[t]o the extent the[se] matter[s] [are] not subsumed by the pending Arbitration"—court costs and attorney's fees, actual and consequential damages arising from Dr. Jones's tortious conduct, exemplary damages under TUTSA and common law breach of fiduciary duty, and other relief to which it might be entitled.

In its forty-nine-page petition, FFC alleged that Dr. Jones began working at its fertility center on August 1, 2018, after entering into an employment agreement

–2–

the prior year.[2] Under the agreement, Dr. Jones was to "observe and comply with such rules, regulations, and policies as Employer and/or its Director may, from time to time, institute orally or in writing." Dr. Jones agreed to accept and treat all patients or matters assigned to her by the Center. The contract also included this confidentiality agreement:

> Employee acknowledges that Employer has a valuable property interest in all aspects of its professional relationship with its patients and all other persons who perform services for said patients. Further, Employee acknowledges that in the course of Employee's employment with Employer, she will become aware of and familiar with secret or confidential information of Employer relating to its patients and its internal business operations, including but not limited to, patient lists, patient records, charts, fee schedules, trade secrets, letters, financial information, business or professional techniques or processes, and other documents and information which is required to be maintained in confidence for the continued success of Employer and its business, all of which secret or confidential information is acknowledged by Employee to be and remain at all times the sole and exclusive property of Employer (hereinafter referred to collectively as "Confidential Information").

The agreement further provided that any breach of the confidentiality clause entitled FFC "to secure an injunction requiring Employee to abide by Employee's commitments under such provisions of this agreement in addition to any actions at law for money damages which Employer may be entitled to commence against Employee." Dr. Jones also agreed not to induce any patient to leave the Center during the term of her employment or for one year after the end of her employment.

---

[2] Attached to FFC's petition were over 1,000 pages of exhibits, which included affidavit testimony of FFC's forensics expert.

–3–

The employee handbook also included numerous company policies Dr. Jones was subject to.

FFC alleged that on January 7, 2020, Dr. Jones gave FFC 120 days' notice to terminate the employment relationship and that before and after that date, she diverted a clinic patient to a competitor, failed to participate in marketing efforts, created TJONESIVFMD, PLLC to compete with FFC, and took confidential information, including client lists and pricing information. FFC further alleged Dr. Jones made false statements to patients regarding the Center's lab, continued to send herself and others confidential and proprietary information belonging to FFC, gathered patient contact information, and worked on an employment agreement with an FFC competitor.

FFC's petition disclosed that on January 27, 2020, FFC internally reported its lab and an operating room failed a portion of an "elective air quality" test, the passing of which was "not required to comply with the standards necessary to maintain a fertility lab." In this confidential report, FFC advised the Center's staff and employees it was going to replace the air filters, conduct cleaning, and redo the test. FFC claimed Dr. Jones forwarded this report to her lawyer.

According to FFC, Dr. Jones used the lab results as leverage in negotiating a separation agreement and when she "did not get her way in settlement discussions, she then proceeded to make false statements to third parties and patients concerning the lab's compliance and viability." Dr. Jones told the Texas Medical Liability

–4–

Trust, the malpractice insurance carrier for the Center, that the lab failed air quality tests, which she said impacted patient care. She also told a Center patient about the test and encouraged her to go to another lab.[3]

FFC served Dr. Jones with a cease and desist letter on March 4, 2020. The letter demanded she cease violating her employment agreement, and it gave her one day to comply. FFC warned failure to comply would result in the termination of her employment. After Dr. Jones denied any wrongdoing, FFC made a final settlement offer. Dr. Jones did not respond and was terminated on March 6, 2020, "for cause."[4]

FFC subsequently conducted an investigation, including forensic examinations of Dr. Jones's work computers, and determined Dr. Jones violated her employment agreement in other ways.

### b. Temporary restraining order

The trial court granted FFC's request for a temporary restraining order on June 4, 2020. The trial court found Dr. Jones's unauthorized possession and use of FFC's confidential information, misappropriation of FFC's trade secrets under TUTSA, and breach of fiduciary duty owed to FFC would irreparably harm FFC and cause it to suffer mounting damages without an adequate remedy at law. The court further found Dr. Jones's conduct violated her obligations under her employment agreement

---

[3] In contrast, Dr. Jones asserted the report sent to Center employees was a "gross understatement" of the results of the lab's air quality test.

[4] On March 25, 2020—some three weeks following her termination—Dr. Jones filed a complaint with the Texas Medical Board regarding the test results. On May 18, 2020, the Board declined to initiate an investigation of her complaint.

with FFC. The court concluded it had good cause to believe Dr. Jones and her co-appellant "singularly or jointly" engaged in the conduct described in FFC's petition, which it set forth in detail.

The trial court ordered Dr. Jones to refrain from destroying, altering, or accessing any confidential information or other property belonging to FFC; disseminating or using confidential information, proprietary techniques, or trade secrets Dr. Jones obtained while working for FFC; soliciting, directly or indirectly, anyone referenced on a patient list Dr. Jones obtained or created while working at the Center; and disseminating or using a patient list belonging to FFC that Dr. Jones obtained or created while employed there. Dr. Jones was ordered to return any confidential information, proprietary techniques, or trade secrets she obtained while working at the Center. The temporary restraining order was extended by agreement on June 30 and again on August 24.

*c. Dr. Jones's TCPA motion to dismiss*

On July 31, 2020, Dr. Jones filed a Motion to Dismiss Pursuant to the TCPA. She "request[ed] the Court dismiss the Retaliatory lawsuit in light of its underlying claims which in effect violate her exercise of free speech." Dr. Jones's request for relief sought "[d]ismissal of Plaintiff's claims . . . as the actions and [sic] complained of were protected by the Texas Citizen's Participation Act."

In the motion, Dr. Jones alleged FFC's lawsuit was meant to restrain Dr. Jones from "communicating [FFC's] profit driven, patient endangering policies." Dr.

Jones alleged that, after learning about the air quality test failure and reaching out to FFC's insurer, the insurer advised Dr. Jones "that she needed to discuss concerns with patients" about the test "to avoid future liability." Dr. Jones advised the Center's lab director and FFC's owner that patients should be informed about the issues with the lab. Dr. Jones alleged FFC "directed Dr. Jones to withhold information about the lab's air quality and directed [her] to continue to send patients to the [lab.]" She also alleged she exercised her free speech rights to inform patients about the lab's issues and she was terminated as a result. Dr. Jones further alleged that at some point prior to FFC filing its petition, she "filed a Texas Medical Board complaint against [FFC]."

Dr. Jones also claimed immunity from FFC's misappropriation of trade secret claims under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1833, and claimed that her professional judgment was protected by section 162.0021 of the occupations code, TEX. OCC. CODE § 162.0021, and by the employee handbook, which included an "anti-retaliation and whistleblower policy."

FFC requested discovery under the TCPA. The trial court held a hearing on the request on August 25, 2020, and granted it on September 18, 2020.

*d. Temporary injunction*

Following a hearing, the trial court granted a temporary injunction in favor of FFC on October 2, 2020. Among other incidents, the court found that Dr. Jones misappropriated FFC's confidential information and trade secrets, "specifically,

–7–

pricing and referral source information, physician-specific service and outcome information, and patient medical records, including medical conditions, treatments, financial and other confidential patient information"; obtained and stored information belonging to FFC contrary to FFC policies; placed confidential patient health information belonging to FFC on a thumb drive and saved it to her desktop computer; downloaded to thumb drives FFC's proprietary procedures, manuals, workflows, statistical analysis, and instructions; forwarded to her personal email address emails from her work email address containing confidential and proprietary information; and negotiated with an FFC competitor during her employment at the Center. As a result, the court commanded Dr. Jones to refrain from the same conduct it previously proscribed in the temporary restraining order. Dr. Jones was also ordered to return any confidential information obtained by her during her employment at the Center and to delete any copies of that information stored on Dr. Jones's personal devices.

The temporary injunction provided it would "continue in force until completion of final trial/hearing on the merits before the American Arbitration Association ('AAA') and the execution of a final judgment in this Cause at the conclusion of such arbitration, or until further order of this Court or the agreement of the parties." The order also noted "that the proceeding in this Court has been filed for the limited purpose of resolving Plaintiff's request for temporary injunctive relief," and that "any final resolution of the merits will be determined by the AAA

arbitrator, subject to final confirmation from this Court in accordance with Texas law."

*e. TCPA motion denied by operation of law*

FFC filed its response to Dr. Jones's TCPA motion on November 17, 2020, and also requested court costs and attorney's fees under section 27.009(b). Dr. Jones filed a reply to FFC's response. When the trial court failed to rule on the motion by the statutory deadline, the motion and FFC's request for fees and costs were overruled by operation of law. *See* TEX. CIV. PRAC. & REM. CODE § 27.008(a). Appellants appealed, and FFC cross-appealed.

## II. DISCUSSION

*a. Standard of review and applicable law*

"The [TCPA] protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). Its purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002.

Under the TCPA, a party may file a motion to dismiss a legal action "based on" or "in response to a party's exercise of the right to free speech, right to petition,

–9–

or right of association[.]" *Id*. § 27.003(a). A three-step decisional process follows. First, the trial court must dismiss the legal action "if the moving party demonstrates that the legal action is based on or is in response to: (1) the party's exercise of: (A) the right of free speech; (B) the right to petition; or (C) the right of association; or (2) the act of a party described by Section 27.010(b)." *Id*. § 27.005(c). But, second, the court "may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c).[5] Finally, the court must dismiss the legal action if the movant "establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id*. § 27.005(d). If the movant prevails and the trial court dismisses the legal action, the court shall award to that party court costs and reasonable attorney's fees, and it may award to the moving party sanctions against the party that brought the legal action. *See id*. § 27.009(a). On the other hand, if the court finds that the motion to dismiss is "frivolous or solely intended to delay," the court may award costs and fees to the non-moving party. *Id*. § 27.009(b).

---

[5] Although we need not address the issue here given the reason for our disposition on the issue of the TCPA's applicability, we note we have previously concluded that, "[By] prevailing on its requests for a temporary restraining order and a preliminary injunction, in support of which it established a likelihood of success on the merits of its claims, [the TCPA non-movant] established every essential element of each of its claims by *at least* clear and specific evidence" for TCPA step-two purposes. *Gehrke v. Merritt Hawkins & Assocs., LLC*, No. 05-19-00026-CV, 2020 WL 255689, at *4 (Tex. App.—Dallas Jan. 17, 2020, no pet.) (mem. op.).

"Legal action" under the TCPA "means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal, declaratory, or equitable relief." *Id.* § 27.001(6). It does not mean "alternative dispute resolution proceedings." *Id.* § 27.001(6)(B); *see Alternative Dispute Resolution*, BLACK'S LAW DICTIONARY (9th ed. 2010) ("A procedure for settling a dispute by means other than litigation, such as arbitration or mediation.").

Whether the TCPA applies to FFC's request for injunctive relief is an issue of statutory interpretation we review de novo. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). In our review, we consider "the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

In construing the TCPA, we must determine and give effect to the legislature's intent. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). The best guide to what lawmakers intended is the enacted language of a statute, "which necessarily includes any enacted statements of policy or purpose." *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). Moreover, we determine legislative intent from considering an act as a whole rather than its parts in isolation. *City of San Antonio*, 111 S.W.3d at 25. We construe the statute's words "according to their

plain and common meaning, unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) (citations omitted). We "may not judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex. 2015) (per curiam).

### b. Denial of TCPA motion

FFC argues because its underlying claims against Dr. Jones are in arbitration, the TCPA's definition of legal action, which specifically excludes "alternative dispute resolution proceedings," means there is no legal action here that can be dismissed under the TCPA and that, in any event, FFC's request for injunctive relief cannot serve as a separate legal action for TCPA purposes when, as here, the request is nothing more than a component of relief sought as a result of the action pending in arbitration. Dr. Jones argues the contrary, urging that we conclude that she may assail the underlying arbitration claims in FFC's proceeding for injunctive relief, which, if successful, would result in the dismissal of FFC's underlying causes of action and its injunctive relief request as well.[6] We agree with FFC.

Beyond injunctive relief, FFC's trial court petition sought other relief only "[t]o the extent [its state court petition claims are] not subsumed by the pending Arbitration." On this record, it appears the only claims not subsumed by the pending

---

[6] The parties raise various other issues relating to the trial court's denial of Dr. Jones's motion to dismiss. Because we have determined that the TCPA is inapplicable to FFC's injunctive relief request before the trial court, we need not address them.

arbitration are those related to injunctive relief. The trial court determined as much when it carefully noted in its temporary injunction,

> that the parties are currently engaged in binding arbitration before the AAA in Case No. 01-20-0005-4308 and that the proceeding in this Court has been filed for the limited purpose of resolving Plaintiff's request for temporary injunctive relief, which the parties and the AAA have decided is outside the scope of the applicable arbitration agreement. Any final resolution of the merits will be determined by the AAA arbitrator, subject to final confirmation from this Court in accordance with Texas law.

Dr. Jones does not dispute FFC's petition for injunctive relief is ancillary to and in aid of arbitration because the parties could not agree to the use of AAA's rules for injunctive relief. In other words, FFC's petition is not a standalone suit, disconnected from FFC's substantive, underlying claims. Although the arbitration is stayed because the question of arbitrability is being litigated in a separate action as it relates to appellant TJONESIVFMD, PLLC, we nevertheless see no basis to contradict what the trial court found and what is indisputable on the record before us: FFC's claims are in arbitration and its suit here was filed "for the limited purpose of resolving Plaintiff's request for temporary injunctive relief[.]"

Further, nothing in Dr. Jones's TCPA motion to dismiss indicates she was seeking to dismiss FFC's request for injunctive relief as such, which was the case in *GN Ventures v. Stanley*, No. 05-19-01076-CV, 2020 WL 5868282 (Tex. App.— Dallas Oct. 2, 2020, pet. denied) (mem. op.), on which Dr. Jones relies. But unlike the TCPA motion to dismiss in that case, Dr. Jones's motion does not engage the

elements of a claim for injunctive relief.[7]  On the contrary, she sought to "dismiss the Retaliatory lawsuit in light of *its underlying claims* which in effect violate her exercise of free speech" (emphasis added).  Dr. Jones confirms this in her briefing by acknowledging "*the TCPA motion here seeks to dismiss the underlying claims*" (emphasis added).  Put differently, Dr. Jones used the state court injunction proceeding—which FFC was required to initiate because Dr. Jones would not agree to injunctive proceedings before the AAA—as a method by which to attack the FFC's causes of action in arbitration.  Thus, this case is unlike *GN Ventures*, where the movant did not challenge underlying claims.  *Id*. at *5 ("because in this case . . . appellants' TCPA motion solely sought dismissal of the request for temporary restraining order and temporary injunction, that requested injunctive relief is the 'claim' the elements of which [appellees] must demonstrate a prima facie case by clear and specific evidence in the second step of the TCPA analysis").

In *GN Ventures*, the appellants filed court claims against the appellees asserting several causes of action and "included a demand for arbitration." *Id*. at *2.  For their part, the appellees filed a motion to compel arbitration and dismiss or stay proceedings.  *Id*.  Some of the appellees then filed an application for a temporary restraining order and temporary injunction.  *Id*.  The appellants filed a response to the application for injunctive relief "in which they included [a] TCPA motion to

---

[7] A party seeking temporary injunctive relief must plead and prove three specific elements: (1) a cause of action; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

dismiss the application for injunctive relief." *Id*. at *3. The trial court denied appellants' motion to dismiss. *Id*. On appeal, this Court noted,

> the injunctive relief is not associated with an underlying claim by the [appellees]. In fact, [they] do not have any underlying claims in this case, just an answer asserting a general denial subject to several pending motions including their motion to compel arbitration. Instead, their request for injunctive relief is merely to maintain the status quo pending arbitration in which all parties will seek their permanent relief.

*Id*. at *4. The Court then turned to the definition of "legal action": a "lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id*. (quoting TEX. CIV. PRAC. & REM. CODE § 27.003(a)). It observed that "[a] temporary restraining order and temporary injunction are equitable relief." *Id*. (citing *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 423 (Tex. 2011)). Thus, appellees' "request for a pre-arbitration temporary restraining order and temporary injunction" was a "legal action" for TCPA purposes in the case before it. *Id*. at *5. The Court concluded that the scope of the appeal was a TCPA motion seeking to dismiss appellees' request for injunctive relief—"not permanent dismissal of a cause of action or entire lawsuit." *Id*. That being the case, the "claim" for which the appellees had to demonstrate a prima facie case in the second step of the TCPA analysis was as to "requested injunctive relief" and not any underlying cause of action. *Id*. Significant in the court's reasoning and conclusion was that section 171.086 of the Texas Arbitration Act authorizes a court to grant injunctive relief to, among other

–15–

things, preserve the status quo and take other actions *before* proceedings in arbitration begin. *See* TEX. CIV. PRAC. & REM. CODE § 171.086(a)(3).

In the different circumstances that confront us in this case, we agree with other courts of appeals that have considered the question on similar facts and concluded that where injunctive relief is sought ancillary to a pending cause of action, it does not constitute a separate legal action that is assailable by a TCPA motion to dismiss. For example, in *Cavin v. Abbott*, 613 S.W.3d 168 (Tex. App.—Austin 2020, pet. denied), Abbott, the plaintiff in the trial court, alleged a cause of action for assault against Cavin in which she sought damages. Sometime later, Abbott amended her claim to also seek injunctive relief arising from the assault. Cavin moved to dismiss the injunctive relief claim, the trial court denied the motion, and the Third Court of Appeals affirmed the denial. In doing so, the court concluded "that the injunction sought here is not a separate legal action" and "the TCPA does not allow a request for injunctive relief to be separately challenged when it is linked to a cause of action." *Id*. at 171 (citing *Thang Bui v. Dangelas*, No. 01-18-01146-CV, 2019 WL 5151410 (Tex. App.—Houston [1st Dist.] Oct. 15, 2019, pet. denied) (mem. op.) ("injunctive relief was a form of remedy tied to the defamation cause of action . . . . [and] a remedy request is not separately challengeable apart from the cause of action to which it is linked.")); *see also Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *24 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.) ("a request for injunctive relief may not be separately challenged under the TCPA as a

discrete legal action."); *Stone v. Melillo*, No. 14-18-00971-CV, 2020 WL 6143126, at *5 (Tex. App.—Houston [14th Dist.] Oct. 20, 2020, no pet.) (mem. op.) (TCPA inapplicable to request for injunction separately from the claim for defamation on which requested injunctive relief is based); *Van Der Linden v. Khan*, 535 S.W.3d 179, 203 (Tex. App.—Fort Worth 2017, pet denied) ("injunctive relief is a remedy, not a stand-alone cause of action" and "[t]he TCPA provides for dismissal of actions, not remedies.").

Today, we answer the question we left open in *Ruder v. Jordan*, No. 05-14-01265-CV, 2015 WL 4397636, at *6 (Tex. App.—Dallas July 20, 2015, no pet.) (mem. op.), where we declined to review separately the trial court's denial of a TCPA motion to dismiss a claim for injunctive relief because it was ancillary to defamation claims we determined were subject to dismissal under the TCPA. We now conclude, in line with our sister courts, that where a request for injunctive relief is linked to a cause of action, such a request is merely a request for a remedy and not a separate legal action subject to challenge under the TCPA. Indeed, should the underlying cause of action vanish, so too would the requested injunctive relief.

Even if we were incorrect in this determination, we are nevertheless confident that our ultimate conclusion is correct here for an equally important reason. Under the 2019 amendments to the TCPA, claims in arbitration are immune from challenge

under the TCPA. *See* TEX. CIV. PRAC. & REM. CODE § 27.001(6)(B).[8] As we have noted, although Dr. Jones's motion was filed in the ancillary injunctive relief proceeding in the district court, Dr. Jones's TCPA motion was directed at the claims pending in the arbitral forum. In such circumstances, to permit Dr. Jones to attack the underlying arbitration claims in a challenge filed in FFC's court-assisted injunctive relief proceeding would undercut the legislative determination that such claims are not assailable by a TCPA motion to dismiss. Such an end-run around the statutory mandate is impermissible in our view. Moreover, under Dr. Jones's reasoning, such an interpretation would impair the ability of parties in arbitration to seek assistive action from a court to insure the efficacy of the arbitration process by, for example, securing injunctive relief or even obtaining confirmation or vacatur of a final arbitration award.

Thus, we further conclude that where, like here, substantive claims are in arbitration, those claims are not susceptible to being dismissed under the TCPA, absent circumstances that are not present in this case. *See* TEX. CIV. PRAC. & REM.

---

[8] Notably, *GN Ventures* was decided before the TCPA's 2019 amendments excluded alternative dispute resolution proceedings from the definition of "legal action[s]" subject to TCPA coverage. As that opinion pointed out, "In 2019, the legislature amended the TCPA including adding exclusions to the definition of 'legal action' in section 27.001(6) . . . . We express no opinion about whether a request for temporary, equitable, injunctive relief unsupported by a cause of action is within the ambit of section 27.001(6) as amended." 2020 WL 5868282, at *4 n.7.

CODE § 27.001(6)(B) ("legal action" does not mean alternative dispute resolution proceedings).

Dr. Jones's sole issue is overruled.

*c. Costs and fees under section 27.009(b)*

In its response to Dr. Jones's TCPA motion, FFC requested court costs and attorney's fees under section 27.009(b) because, it argued, Dr. Jones's motion was frivolous and solely intended for delay. FFC's request was overruled by operation of law.[9]

A court may award court costs and reasonable attorney's fees to the nonmovant if it "finds that a motion to dismiss filed under this chapter is frivolous or solely intended to delay." TEX. CIV. PRAC. & REM. CODE § 27.009(b). An award under this section "is entirely discretionary and requires the trial court to find the motion was frivolous or solely intended to delay." *Lei v. Nat. Polymer Int'l Corp.*, 578 S.W.3d 706, 717 (Tex. App.—Dallas 2019, no pet.). "Frivolous" is not defined in the TCPA. But numerous courts have noted that its common understanding contemplates that "a claim or motion will be considered frivolous if it has no basis in law or fact and lacks a legal basis or legal merit." *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). "[T]he fact that a motion to dismiss under the TCPA is ultimately denied is not sufficient, in and of

---

[9] FFC filed a timely notice of appeal challenging the overruling of its request for costs and fees. *See Thomas v. Wm. Charles Bundren & Assocs. Law Grp. PLLC*, No. 05-20-00632-CV, 2021 WL 3159795, at *8 (Tex. App.—Dallas July 26, 2021, no pet.) (mem. op.).

itself, to support a finding that the motion was frivolous." *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 244 (Tex. App.—Eastland 2019, no pet.).

We cannot conclude that the trial court abused its discretion in denying court costs and attorney's fees under section 27.009(b). Although our conclusion above— that FFC's suit for injunctive relief is not a legal action—resolves this case, the trial court nevertheless could have reasonably determined that Dr. Jones, at the time she filed her motion, viewed FFC's conditionally framed petition as seeking substantive relief in the trial court. Although it is a close question on the record before us, the trial court therefore could have concluded there was *some* basis in fact and law for Dr. Jones's motion. Looking beyond the threshold question of the definition of "legal action," we reach the same conclusion. Nor does the record compel the conclusion the trial court abused its discretion in finding that Dr. Jones's motion was not "solely" intended to delay. While this issue also presents a close question, the trial court could have concluded that Dr. Jones and her counsel were putting up a vigorous defense to FFC's actions. We will not second-guess the trial court in these determinations. We overrule FFC's cross-issue.

## III.    CONCLUSION

Having overruled the two issues before us, we affirm the denial by operation of law of Dr. Jones's motion to dismiss and FFC's motion for attorney's fees and costs under the TCPA.


210008f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TIFFANNY JONES, M.D. AND
TJONESIVFMD, PLLC, Appellants

No. 05-21-00008-CV        V.

FRISCO FERTILITY CENTER,
PLLC, D/B/A DALLAS IVF,
Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-02739-
2020.
Opinion delivered by Justice
Molberg. Justices Nowell and
Goldstein participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the denial by operation of law of appellants' TCPA motion to dismiss.

It is **ORDERED** that appellee FRISCO FERTILITY CENTER, PLLC, D/B/A DALLAS IVF recover its costs of this appeal from appellants TIFFANNY JONES, M.D. AND TJONESIVFMD, PLLC.

Judgment entered this 28th day of November 2022.